**In the United States District Court**
**For the Western District of Virginia**
Harrisonburg Division

| | |
|---|---|
| JOANNE HARRIS and JESSICA DUFF, and CHRISTY BERGHOFF and VICTORIA KIDD, on behalf of themselves and all others similarly situated, | |
| | No. 5:13-cv-00077 |
| *Plaintiffs*, | |
| v. | |
| ROBERT F. MCDONNELL, in his official capacity as Governor of Virginia; JANET M. RAINEY, in her official capacity as State Registrar of Vital Records; THOMAS E. ROBERTS, in his official capacity as Staunton Circuit Court Clerk, | |
| *Defendants*. | |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS GOVERNOR McDONNELL

Plaintiffs submit the following Memorandum of Law in Opposition to Defendants' Motion to Dismiss Governor McDonnell.

## FACTUAL BACKGROUND

On August 1, 2013, Plaintiffs filed a class-action complaint alleging that Virginia's statutory and constitutional bans on allowing same-sex couples to marry, and on recognizing the marriages of same-sex couples legally married in other jurisdictions, violate the rights of Plaintiffs and other similarly situated same-sex couples under the equal protection and due process guarantees of the Fourteenth Amendment. In accordance with the *Ex parte Young*, 209 U.S. 123 (1908), exception to Eleventh Amendment immunity, Plaintiffs filed this suit against the Governor of Virginia, the State Registrar of Vital Records, and the Staunton Circuit Court

Clerk in their official capacities.  Compl. ¶¶ 34-37.  The complaint seeks a declaratory judgment that Virginia's marriage bans are unconstitutional and an injunction against each of the defendants in their official capacities – and all persons under their supervision, direction, or control – to enjoin them from enforcing these unconstitutional enactments, and to compel them to allow same-sex couples to marry and to recognize the marriages of same-sex couples from other jurisdictions, on the same terms as different-sex couples.  Compl. ¶¶ 37, B-D, G.

As detailed in Plaintiffs' complaint, Virginia's sweeping statutory and constitutional marriage bans do not simply prohibit state officials from issuing marriage licenses to same-sex couples.  The marriage bans also prohibit the Commonwealth and its political subdivisions from recognizing the marriages of same-sex couples for any purpose, even if those marriages were validly entered into in other jurisdictions.  For example, Virginia's statutory ban provides that:

> A marriage between persons of the same sex is prohibited. Any marriage entered into by persons of the same sex in another state or jurisdiction shall be void in all respects in Virginia and any contractual rights created by such marriage shall be void and unenforceable.

Va. Code Ann. § 20-45.2.  Virginia's Constitution further provides:

> That only a union between one man and one woman may be a marriage valid in or recognized by this Commonwealth and its political subdivisions.

> This Commonwealth and its political subdivisions shall not create or recognize a legal status for relationships of unmarried individuals that intends to approximate the design, qualities, significance, or effects of marriage.  Nor shall this Commonwealth or its political subdivisions create or recognize another union, partnership, or other legal status to which is assigned the rights, benefits, obligations, qualities, or effects of marriage.

Va. Const. art. 1, § 15-A.  By preventing Commonwealth officials from recognizing the marriages of same-sex couples for any purpose, Virginia's sweeping statutory and constitutional marriage bans disqualify same-sex couples from critically important rights and responsibilities that different-sex couples rely upon to secure their commitment to each other, and to safeguard

2

their families.  *See* Compl. ¶¶ 56-57 (describing the family protections denied to same-sex couples, such as the ability to secure parent-child relationships and make medical decisions in times of death and disaster, and a host of federal rights and responsibilities).  In addition to these tangible harms, the substantive and dignitary inequities imposed on committed same-sex couples include particular harms to same-sex couples' children, who are equally deserving of the stability, permanence, and legitimacy that are enjoyed by children of different-sex couples who marry.  *See* Compl. ¶¶ 58-61.  The bans also impose immediate dignitary harms on same-sex couples and their children by using the imprimatur of the government to instruct all persons with whom same-sex couples interact, including those couples' own children, that same-sex couples are unfit for the dignity, respect, and stature afforded to married different-sex couples.  *See* Compl. ¶ 60.

Because the sweeping bans on recognizing the marriages of same-sex couples for any purpose apply to every component of the Commonwealth and its political subdivisions, Plaintiffs brought official-capacity claims not only against the County Clerk and the Registrar of Vital Records, but also against the Governor, who has responsibility for supervising how the ban on recognizing the marriages of same-sex couples is implemented throughout the executive branch and all executive branch agencies.  *See* Compl. ¶ 34.   In addition to the Governor's general responsibility for faithfully executing the laws, Va. Code Ann. § 2.2-103 vests the Governor with authority and responsibility for the formulation and administration of the policies of the executive branch.  Compl. ¶ 34.   Governor McDonnell is thus responsible for formulating and administering agency policies relating to health insurance coverage, vital records, tax obligations, state employee benefits programs (including in Governor McDonnell's role as Chief Personnel Officer of the Commonwealth), motor vehicles (including, for example, changing

one's last name on a driver's license), and regulation of health professions (including, for example, implementation of laws governing medical decision-making by family members and requests for autopsies) – all of which involve recognizing marital status.   Compl. ¶ 34.  Pursuant to Va. Code Ann. § 2.2-106, the Governor also has supervisory authority over the heads of state agencies, whom he appoints and who serve at his pleasure, such that they may be removed based on how they administer state law (such as the marriage bans) and their obligations under the federal Constitution.  Compl. ¶ 34.  In addition, under Va. Code Ann. §§ 2.2-107 and 2.2-108, Governor McDonnell has supervisory power to appoint members of certain boards, commissions, councils and collegial bodies and unreviewable authority to remove those appointees for failure to carry out the policies of the Commonwealth or other forms of misconduct, including failure to comply with the obligations of the federal Constitution.  Compl. ¶ 34.  As a result of these responsibilities, an injunction against Governor McDonnell in his official capacity – and all others within his direction, supervision, or control, *see* Compl. ¶¶ 37, G; Fed. R. Civ. P. 65(d)(2)(B) – would ensure that the marriages of Plaintiffs and other same-sex couples are recognized consistently and on equal terms throughout the Executive branch and its agencies.

On August 16, 2013, Governor McDonnell filed the pending motion to dismiss the claims against him.  The accompanying memorandum of law asserted that there was not a sufficient connection between the Governor's official responsibilities and the statutory and constitutional marriage bans because the Complaint ostensibly sought to name the Governor as a defendant based solely on his general duty to enforce the law.  *See* Def.'s Mem. 2.  The memorandum did not discuss the other allegations in paragraph 34 of Plaintiffs' complaint regarding the Governor's responsibility for formulating and administering executive branch policy,

supervisory control over all executive branch agencies, and power to appoint and remove agency heads and other state officials.

## ARGUMENT

Defendants' motion to dismiss the official-capacity claims against Governor McDonnell should be denied.  Plaintiffs' official-capacity claims against Governor McDonnell are based on much more than "[t]he mere fact that a governor is under a general duty to enforce state laws." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001) (quoting *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir.1979)).  As detailed in Plaintiffs' complaint, in addition to this general duty, Governor McDonnell is also the government official charged with setting policies for the executive branch, including all state agencies, and is empowered to remove agency heads and other state officials and commissioners for failing to follow executive branch policy or the constitution.  *See* Compl. ¶ 34; Va. Code Ann. §§ 2.2-103, 2.2-106, 2.2-107, 2.2-108.   This supervisory control provides the Governor with the requisite "special relationship" to the unconstitutional state laws for purposes of an *Ex parte Young* injunction because a permanent injunction against Governor McDonnell in his official capacity – and all others within his direction, supervision, or control, *see* Compl. ¶¶ 37, G; Fed. R. Civ. P. 65(d)(2)(B) – would remedy the constitutional violations and ensure that the marriages of Plaintiffs and other same-sex couples are recognized consistently and on equal terms throughout the executive branch and its agencies.  *Cf. Perry v. Schwarzenegger*, 704 F. Supp. 2d. 921, 1004 (N.D. Cal. 2010) (in challenge to California's constitutional marriage ban, Proposition 8, issuing permanent injunction prohibiting the Governor and other official-capacity defendants "from applying or enforcing Proposition 8 and directing the official defendants that all persons under their control or supervision shall not apply or enforce Proposition 8"), *aff'd on other grounds sub nom. Perry*

5

*v. Brown*, 671 F.3d 1052 (9th Cir. 2012), *vacated and remanded on other grounds sub nom.*

*Hollingsworth v. Perry*, 133 S. Ct. 2652 (2013) .  Although in typical cases where a specific

challenged law is enforced by a specific agency or prosecuting office it may not be necessary or

appropriate to include the Governor as an official-capacity defendant, when a state takes the

unusual step of imposing a broad, undifferentiated disadvantage that cuts across every

component of state government, the Governor's responsibility for formulating and administering

executive branch policy makes him the most appropriate defendant for purposes of an *Ex parte*

*Young*  injunction.  *See Citizens for Equal Prot. v. Bruning*, 455 F.3d 859, 864 (8th Cir. 2006)

(holding that Governor was proper defendant under *Ex parte Young* for purposes of challenging

similarly sweeping marriage ban in Nebraska).

"Where a state law is challenged as unconstitutional, a defendant must have 'some

connection with the enforcement of the act' in order to properly be a party to the suit."  *S.C.*

*Wildlife Fed'n. v. Limehouse*, 549 F.3d 324, 332 (4th Cir. 2008) (quoting *Lytle v. Griffith*, 240

F.3d 404, 409 (4th Cir. 2001)).  The purpose of requiring this "special relation" is to "ensur[e]

that, in the event a plaintiff sues a state official in his individual capacity to enjoin

unconstitutional action, '[any] federal injunction will be effective with respect to the underlying

claim.'"  *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010) (quoting *Limehouse*, 549

F.3d at 333).   The defendant's connection to the challenged law "need not be

*qualitatively* special; rather, 'special relation' under *Ex parte Young* has served as a measure

of *proximity to* and *responsibility for* the challenged state action."  *Limehouse*, 549 F.3d at

333 (emphasis in original).

To be sure, "[t]he mere fact that a governor is under a general duty to enforce state laws

does not make him a proper defendant in every action attacking the constitutionality of a state

6

statute." *Gilmore*, 252 F.3d at 331 (quoting *Shell Oil Co.*, 608 F.2d at 211).  But the "special relationship" requirement does not require that the governor be specifically named in the challenged state law as long as the official's general duties establish a sufficient connection to the challenged act.  "[T]he fact that the state officer by virtue of his office has some connection with the enforcement of the act is the important and material fact, . . .whether it arises out of the general law, or is specially created by the act itself[.]"  *Lytle*, 240 F.3d at 409 (quoting *Ex parte Young*, 209 U.S. at 157 (alterations in *Lytle*)).

Governor McDonnell's motion to dismiss rests on the false premise that Plaintiffs' claims against him are based only on his general duty to enforce the law.  In fact, Plaintiffs' claims are based not only on this general duty but also on his direct supervisory responsibility for all executive agencies, including the power to remove state officials who refuse to follow the Governor's policy or who fail to comply with constitutional requirements.  Compl. ¶ 34.  As discussed above, the complaint alleges that in addition to the Governor's general responsibility for faithfully executing the laws, Va. Code Ann. § 2.2-103 vests the Governor with authority and responsibility for the formulation and administration of the policies of the executive branch. Compl. ¶ 34.  Governor McDonnell is thus responsible for formulating and administering agency policies relating to health insurance coverage, vital records, tax obligations, state employee benefits programs (including in Governor McDonnell's role as Chief Personnel Officer of the Commonwealth), motor vehicles (including, for example, changing one's last name on a driver's license), and regulation of health professions (including, for example, implementation of laws governing medical decision-making by family members and requests for autopsies) – all of which involve recognizing marital status.   Compl. ¶ 34.  Pursuant to Va. Code Ann. § 2.2-106, the Governor also has supervisory control to appoint the heads of state agencies who serve at the

pleasure of the Governor and may therefore be removed based on how they administer state law such as the marriage bans and their obligations under the federal Constitution.  Compl. ¶ 34.  In addition, under Va. Code Ann. §§ 2.2-107 and 2.2-108, Governor McDonnell has supervisory power to appoint members of certain boards, commissions, councils and collegial bodies and unreviewable authority to remove those appointees for failure to carry out the policies of the Commonwealth or other forms of misconduct, including failure to comply with the obligations of the federal Constitution among others.  Compl. ¶ 34.

The Governor's responsibility for formulating and administering executive branch policy, his supervisory control over all executive branch agencies, and his power to appoint and remove agency heads and other governmental officials make him an appropriate defendant for purposes of an *Ex parte Young* injunction.  "A plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation.  Rather, a plaintiff need only identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief."  *Hartmann v. Cal. Dep't. of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013) (citations omitted).  Applying these principles, courts have repeatedly held that governors and other state officials are proper defendants for purposes of *Ex parte Young* when their supervisory powers give the power to respond to an injunction by halting the unconstitutional practices of persons under their control.  For example, in *Limehouse* the Fourth Circuit held that the Executive Director of South Carolina's Department of Transportation was a proper defendant in an *Ex parte Young* suit alleging that the Department had failed to comply with the National Environmental Policy Act because a state statute gave the Director "supervisory authority over the state's participation in the [Final Environmental Impact

8

Statement] process."  *Limehouse*, 549 F.3d at 333.  *See also Papasan v. Allain*, 478 U.S. 265, 282 n.14 (1986) (holding that Mississippi Secretary of State was a proper defendant in *Ex parte Young* suit challenging adequacy of school funding because state statute gave Secretary of State power over "general supervision" of local schools); *Luckey v. Harris*, 860 F.2d 1012, 1015 - 16 (11th Cir. 1988) (holding that Georgia governor's supervisory powers over state prosecutions made governor a proper defendant in *Ex parte Young* suit challenging adequacy of indigent defense funding).

In contrast, when governors and other government officials have been dismissed as *Ex parte Young* defendants, it is because their duties are so far removed from enforcing a challenged statute that an injunction against them would not meaningfully redress the plaintiff's claims.  For example, in *McBurney*, the Fourth Circuit held that the Attorney General was not a proper defendant in a constitutional challenge to the Virginia Freedom of Information Act ("VFOIA") because the Attorney General had no role enforcing compliance with VFOIA.  Although the plaintiffs sought to rely on a provision in VFOIA that allowed "'the attorney for the Commonwealth' to petition for an injunction against a state official for a violation of [VFOIA]," the Fourth Circuit explained that phrase "attorney for the Commonwealth" referred "not to the Attorney General, but rather to the Commonwealth's Attorneys, who are elected local prosecutors."  *McBurney*, 616 F.3d at 400.  *Cf. Hearne v. Bd. of Educ. of City of Chi.*, 185 F.3d 770, 777 (7th Cir.1999) (governor was not a proper defendant because "the plaintiffs have not and could not ask anything of the governor that could conceivably help their cause"); *L.A. Branch NAACP v. L.A. Unified Sch. Dist.*, 714 F.2d 946, 953 (9th Cir. 1983) (governor is not a proper defendant where "the Governor lacks the power" to provide relief).

9

In typical cases where a specific challenged law is enforced by a specific agency or prosecuting office, it may not be necessary or appropriate to include the Governor as an official-capacity defendant for purposes of *Ex parte Young*.  *See Lytle*, 240 F.3d at 414 (Wilkinson, J., dissenting).  But the sweeping marriage bans challenged in this legislation are not typical statutes.  Like the laws struck down in *Romer v. Evans*, 517 U.S. 620 (1996), and *United States v. Windsor*, 133 S. Ct. 2675 (2013), Virginia's ban on recognizing the marriages of same-sex couples for any purpose "identifies persons by a single trait and then denies them protection across the board," *Romer*, 517 U.S. at 633, and is "a system-wide enactment with no identified connection" to any particular state program, *Windsor*, 133 S. Ct. at 2694.  These types of "laws singling out a certain class of citizens for disfavored legal status or general hardships are rare." *Romer*, 517 U.S. at 633.  Because Virginia's marriage bans impose a broad, undifferentiated disadvantage that cuts across every component of state government, the Governor's responsibility for formulating and administering executive branch policy and his supervisory control over all executive branch agencies establish his "*proximity to* and *responsibility for* the challenged state action" (emphasis in original), and guarantee that "[any] federal injunction will be effective with respect to the underlying claim." *Limehouse*, 549 F.3d at 333.  *See Citizens for Equal Prot.*, 455 F.3d at 864 (holding that the Governor was a proper defendant under *Ex parte Young* for purposes of challenging similarly sweeping marriage ban in Nebraska).

For all these reasons, the Governor's extensive supervisory control over the Executive branch provides him with the requisite "special relationship" to the unconstitutional marriage bans for purposes of an *Ex parte Young* injunction.  Because a permanent injunction against Governor McDonnell in his official capacity – and all others within his direction, supervision, or

control, *see* Compl. ¶¶ 37, G; Fed. R. Civ. P. 65(d)(2)(B) – would remedy the constitutional

violations, the motion to dismiss should be denied.

## CONCLUSION

Defendant's Motion to Dismiss Governor McDonnell should be denied.

Dated: August 28, 2013


Respectfully submitted,

AMERICAN CIVIL LIBERTIES UNION
OF VIRGINIA FOUNDATION, INC.

_____/s/_____
Rebecca K. Glenberg (VSB No. 44099)
701 E. Franklin Street, Suite 1412
Richmond, Virginia 23219
Phone: (804) 644-8080
Fax: (804) 649-2733
rglenberg@acluva.org


LAMBDA LEGAL DEFENSE AND EDUCATION FUND,
INC.

Greg Nevins
730 Peachtree Street, NE, Suite 1070
Atlanta, Georgia 30308
Phone: (404) 897-1880
Fax: (404) 897-1884
gnevins@lambdalegal.org

Tara L. Borelli
3325 Wilshire Boulevard, Suite 1300
Los Angeles, California 90010
Phone: (213) 382-7600
Fax: (213) 351-6050
tborelli@lambdalegal.org

*Counsel for Plaintiffs*

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

James D. Esseks
Amanda C. Goad
Joshua A. Block
125 Broad Street, 18th Floor
New York, New York 10004
Phone: (212) 549-2500
Fax: (212) 549-2650
jesseks@aclu.org
agoad@aclu.org
jblock@aclu.org


JENNER & BLOCK LLP

Paul M. Smith
Luke C. Platzer
Mark P. Gaber
1099 New York Avenue, NW Suite 900
Washington, D.C. 20001-4412
Phone: (202) 639-6000
Fax: (202) 639-6066
psmith@jenner.com
lplatzer@jenner.com
mgaber@jenner.com

## <u>CERTIFICATE OF SERVICE</u>

I, Rebecca K. Glenberg, hereby certify that Plaintiffs' Opposition to Defendants' Motion to Dismiss Governor McDonnell was filed on August 28, 2013 with the Clerk of Court using the CM/ECF system, which will automatically send a copy to the following:


E. Duncan Getchell, Jr.
Solicitor General of Virginia
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
dgetchell@oag.state.va.us

I further certify that on August 28, 2013, Plaintiffs' Opposition to Defendants' Motion to Dismiss Governor McDonnell was served by U.S. Mail, postage prepaid, to the following:

Thomas Roberts
Staunton Circuit Court Clerk
113 East Beverly Street
Staunton, VA 24401



August 28, 2013                           __/s/ Rebecca K. Glenberg_____
                                          Rebecca K. Glenberg (VSB No. 44099)
                                          American Civil Liberties Union of Virginia
                                               Foundation, Inc.
                                          701 E. Franklin Street, Suite 1412
                                          Richmond, Virginia 23219
                                          Phone: (804) 644-8080
                                          Fax: (804) 649-2733
                                          rglenberg@acluva.org