In the United States District Court
For the Western District of Virginia
Harrisonburg Division

| | |
|---|---|
| JOANNE HARRIS and JESSICA DUFF, and CHRISTY BERGHOFF and VICTORIA KIDD, on behalf of themselves and all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> ROBERT F. MCDONNELL, in his official capacity as Governor of Virginia; JANET M. RAINEY, in her official capacity as State Registrar of Vital Records; THOMAS E. ROBERTS, in his official capacity as Staunton Circuit Court Clerk, <br><br> *Defendants*. | No. 5:13-cv-00077 |

**REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Defendants labor at length to create complexity and confusion where none exists, as class certification is not a difficult question in this case. Virginia, by statutory and constitutional provisions, prohibits same-sex couples from being married. By those same measures it also refuses to recognize marriages of same-sex couples validly entered in other jurisdictions. Plaintiffs are same-sex couples who either seek to marry (Joanne Harris and Jessica Duff) or were married in another jurisdiction, but Virginia refuses to recognize their marriage (Christy Berghoff and Victoria Kidd). This is not a complex class action with multiple sub-classes seeking different levels of monetary damages on different theories. Plaintiffs merely seek declaratory and injunctive relief that will benefit the entire class in the same manner—by requiring Virginia to marry same-sex couples and to recognize the valid marriages of same-sex

1

couples. Plaintiffs satisfy the Rule 23 requirements of numerosity, typicality, commonality, and adequacy of representation. Defendants' claims that the Plaintiff class must also meet ascertainability and necessity requirements are unsupported by relevant law. Meanwhile, class certification here will address the risk of the Named Plaintiffs' claims becoming moot due to changes in personal circumstances and thus protect the interests of the estimated 18,000 individual members of the Plaintiff class. The class should be certified and Defendants' frivolous request for discovery should be denied.

I.  **Although There Is No Ascertainability Requirement in Rule 23(b)(2) Class Actions, This Court May Exercise Its Discretion to Remove any Subjective Criteria from the Class Definition.**

Defendants argue that the definition of Plaintiffs' first proposed subclass – all unmarried persons in Virginia who wish to marry a person of the same sex and either have been denied a license or have not attempted to apply because doing so would be futile – is flawed because it refers to class members' mental state and therefore renders the class insufficiently ascertainable. As discussed below, there is no ascertainability requirement for Rule 23(b)(2) class actions, but this Court can also easily address Defendants' concerns by exercising its discretion to modify the class definition to remove the unnecessary subjective elements.

A.  **In the Fourth Circuit As Elsewhere, Rule 23(b)(2) Class Members Need Not Be Specifically Enumerable**

The law is clear that there is no requirement that all the members of a Rule 23(b)(2) class action be readily ascertainable. Indeed, the Advisory Committee notes to Rule 23 specifically explain that Rule 23(b)(2) class actions are designed for "actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, *usually one whose members are incapable of specific enumeration*." Fed. R. Civ. P. 23 Advisory Committee notes (emphasis added). It is therefore no surprise that courts routinely follow the *Manual on Complex*

2

*Litigation*'s and *Newberg*'s position that ascertainability is not required for Rule 23(b)(2) class actions.[1] Instead of focusing on Rule 23(b)(2) class actions, the Defendants rely on cases that sought certification under Rule 23(b)(3), which have different requirements because they seek more than just injunctive relief.[2]

Without citing any actual Fourth Circuit case law on the issue, Defendants incorrectly assert that the Fourth Circuit follows a different rule. To the contrary, although the Fourth Circuit has not squarely ruled on the issue, its opinion in *Doe v. Charleston Area Med. Ctr., Inc.*, 529 F.2d 638, 645 (4th Cir. 1975), suggests it would not adopt Defendants' approach. In that case, the court held that a district court abused its discretion by failing to certify a (b)(2) class of women who wished to have an abortion; the district court had found that the plaintiff failed to

---

[1] *See* Pls.' Br. in Support of Class Certification at 4-5; *see also, e.g.*, *Shook v. El Paso Cnty*, 386 F.3d 963, 972 (10th Cir. 2004); *Battle v. Pennsylvania*, 629 F.2d 269, 271 n.1 (3d Cir. 1980); *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972); *Floyd v. City of New York*, 283 F.R.D. 153, 171-72 (S.D.N.Y. 2012); *Finch v. New York State Office of Children & Family Servs.*, 252 F.R.D. 192, 203 (S.D.N.Y. 2008); *Stewart v. Cheek & Zeehandelar, LLP*, 252 F.R.D. 387, 391 (S.D. Ohio 2008); *Multi-Ethnic Immigrant Workers Organizing Network v. City of Los Angeles*, 246 F.R.D. 621, 630 (C.D. Cal. 2007); *Bzdawka v. Milwaukee Cnty*, 238 F.R.D. 469, 474 (E.D. Wis. 2006); *Rice v. City of Philadelphia*, 66 F.R.D. 17, 19 (E.D. Pa. 1974).

[2] *See* Opp. at 2-3 (citing *Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347 (6th Cir. 2011) (seeking Rule 23(b)(3) certification); *Melton ex rel. Dutton v. Carolina Power & Light Co.*, 283 F.R.D. 280 (D.S.C. 2012) (same); *Elliott v. ITT Corp.*, 150 F.R.D. 569 (N.D. Ill. 1992) (same); *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012) (same); *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443 (5th Cir. 2007) (same, per Complaint); *Fears v. Wilhelmina Model Agency*, No. 02-cv-4911, 2003 U.S. Dist. LEXIS 11897 (S.D.N.Y. July 15, 2003) (same); *Oshana v. Coca-Cola Co.*, 225 F.R.D. 575 (N.D. Ill. 2005) (seeking Rule 23(b)(1) or (b)(3) certification)). Furthermore, the court in *Marcus*, a case cited by State Defendants, specifically affirms *Plaintiffs'* argument: "[m]any courts and commentators have recognized that an essential prerequisite of a class action, *at least with respect to actions under Rule 23(b)(3)*, is that the class must be currently and readily ascertainable based on objective criteria." 687 F.3d at 592-93 (emphasis added).
    Defendants accuse Plaintiffs of "selectively cit[ing]" the *Manual for Complex Litigation* and the leading class action treatise, *Newberg on Class Actions*, but the portions cited by Plaintiffs are from the sections *relevant to Rule 23(b)(2) actions*. State Defendants, on the other hand, *selectively ignore* these provisions and instead draw the Court's attention to the wholly irrelevant provisions that deal with ascertainability of Rule 23(b)(3) classes.

demonstrate numerosity. The Fourth Circuit explained that "[w]here the plaintiff has demonstrated that the class of persons he or she wishes to represent exists, that they are *not specifically identifiable* supports rather than bars the bringing of a class action, because joinder is impracticable." *Id.* at 645 (emphasis added). If specific identities are unneeded in (b)(2) actions to satisfy numerosity, then it would make no sense to separately require proof of ascertainability in a (b)(2) action. Here, Plaintiffs have, without rebuttal evidence from Defendants, submitted evidence that roughly 9,000 same-sex couples in Virginia wish to or are already married. *See* Br. at 5 n.1. Having demonstrated that the class exists, *Doe* at 645, the reference to the subjective criteria is superfluous, and thus does not pose a barrier to certification. *See Biediger v. Quinnipiac Univ.*, No. 3:09cv621 (SRU), 2010 WL 2017773, at *3-4 (D. Conn. May 20, 2010) (certifying class of female students who "want to end" university's sex discrimination, noting that subjective element was "superfluous to the class's definition").

**B. The Court Could Easily Cure Any Perceived Deficiency in the Class Definition**

Defendants' concern that the class definition references class members' state of mind is "a red herring" because, if necessary, the Court can easily remove any subjective terms from the class definition. *Chiang v. Veneman*, 385 F.3d 256, 272 (3d Cir.2004), *abrogated on other grounds by In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 318 n.18 (3d Cir. 2008). "A court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly." *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993); *see also, e.g.*, *Powers v. Hamilton Cnty. Pub. Defenders Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007); *In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2005); *Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 750 (7th Cir. 2005); *Finberg v. Sullivan*, 634 F.2d 50, 64 n.9 (3d Cir. 1980); *Social Servs. Union, Local 535 v. Cnty. of Santa*

*Clara*, 609 F.2d 944, 948-49 (9th Cir. 1979); Charles A. Wright & Arthur Miller, *Federal Practice and Procedure* § 1760.

The Court may therefore exercise its discretion here to modify the class definition to include all same-sex couples in Virginia and remove any reference to class members' state of mind. *See Chiang*, 385 F.3d at 272 (modifying the class definition so that it was not contingent upon class members' "belief" that they were discriminated against); *Williams v. City of Antioch*, No. C 08-02301 SBA, 2010 WL 3632197, at *7 (N.D. Cal. Sept. 2, 2010) (modifying class definition to remove reference to those who police "erroneously regarded" as holding Section 8 vouchers); *Harris v. Gen. Dev. Corp.*, 127 F.R.D. 655, 659-60 (N.D. Ill. 1989) (modifying class definition in racial discrimination suit by removing reference to those "deterred" from applying for job); *Quigley v. Braniff Airways, Inc.*, 85 F.R.D. 74, 84-85 (N.D. Tex. 1979) (same); *Rosario v. Cook Cnty.*, 101 F.R.D. 659, 660, 664 (N.D. Ill. 1983) (modifying class definition regarding allegedly discriminatory promotion procedures to apply only to those who applied for a position).

Such a modification would remove the subjective criteria from the class definitions as unnecessary surplussage. Although this modification might encompass some same-sex couples who do not at the present time wish to marry, this does not pose a problem for class certification or affect the relief Plaintiffs seek in this case. The Federal Rules do "not mandate that all members of the (b)(2) class be aggrieved by or desire to challenge the defendant's conduct." *Jones v. Diamond*, 519 F.2d 1090, 1100 (5th Cir. 1975). Instead, "[a]ction or inaction is directed to a class within the meaning of [Rule 23(b)(2)] even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class." Fed. R. Civ. P. 23 Advisory Committee notes to 1966 Amendment; *see*

*also Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010) (citing Advisory Committee notes for proposition that class may be certified even if not all members have yet been injured, provided grounds for potential injury have general application to the class); *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 2004) ("[C]lass members can assert such a single common complaint even if they have not all suffered actual injury; demonstrating that all class members are *subject* to the same harm will suffice.") (emphasis in original); *cf. Griffin v. Burns*, 570 F.2d 1065, 1073 (1st Cir. 1978) (noting that "not all class members need be aggrieved by or desire to challenge defendant's conduct in order for some to seek relief under (b)(2)") (internal quotation marks omitted); *Davis v. Weir*, 497 F.2d 139, 146 (5th Cir. 1974) (same).

**II.     Although There Is No "Necessity" Requirement, Class Certification Is Necessary to Avoid the Risk of Mootness.**

Defendants contend that class certification should be denied because it would "as a practical matter add nothing to the relief accorded by injunction and/or declaratory judgment." *See* Opp. at 5. This is so because, apparently, "it can be assumed that if the court declares the statute or regulation unconstitutional then the responsible government officials will discontinue the [marriage ban's] enforcement." *Id.* at 6 (internal quotation marks omitted). According to Defendants, because class certification is not absolutely necessary in order to stop the marriage bans from being enforced, certification must be denied.

There is no requirement that class certification must be "necessary" in order for a class to be certified. "Many courts have rejected the necessity doctrine outright as being non-textual, noting that a need requirement finds no support in Rule 23 and, if applied, would entirely negate any proper class certifications under Rule 23(b), a result hardly intended by the Rules Advisory Committee." 2 NEWBERG ON CLASS ACTIONS at § 4:35; *see, e.g., Brown v. Scott*, 602 F.2d 791, 795 (7th Cir. 1979), *judgment aff'd*, 447 U.S. 455 (1980) ("In a number of cases this court has

6

held that if the requirements of Rule 23 are satisfied class certification should not be refused because of lack of need."); *Californians for Disability Rights, Inc. v. California Dep't of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008) (finding that a necessity "requirement would effectively eviscerate Rule 23(b)(2), which was specifically designed with the benefits of collective action in mind"); *Disability Rights Council of Greater Washington v. Washington Metro. Area Transit Auth.*, 239 F.R.D. 9, 23 (D.D.C. 2006) ("As numerous courts have observed, whether certification is 'necessary' is not a question Rule 23 directs the courts to consider."); *Gatter v. Cleland*, 87 F.R.D. 66 (E.D. Pa. 1980) ("[T]he adoption of a 'need' requirement would virtually eliminate class certification under Rule 23(b)(2)").

To be sure, an individual plaintiff can under certain circumstances obtain broad injunctive relief that benefits nonparties even when there has been no class certification. For example, in the case cited by Defendants, the Fourth Circuit held that, even without class certification, "[w]e are of opinion that the facts present a sufficiently clear and flagrant case of discrimination that the District Court committed clear error in failing to grant to [plaintiff] injunctive relief against the further maintenance by the defendant of a policy of discrimination against black people seeking to rent and purchase housing accommodations." *Sandford v. R.L. Coleman Realty Co., Inc.*, 573 F.2d 173, 179 (4th Cir. 1978) (internal quotation marks and footnotes omitted). But just because class certification was not necessary to obtain broad injunctive relief does not mean that that class certification would have been impermissible. Indeed, if such a broad necessity requirement were the law, then no class could ever be certified under Rule 23(b)(2); the *same* quality that makes certification under (b)(2) appropriate— "act[ion] on grounds that apply generally to the class so that final . . . relief is appropriate

7

respecting the *class as a whole*," Fed. R. Civ. P. 23(b)(2)—would by Defendants' argument make certification unnecessary. That is not the law.

In any event, although there is no necessity requirement, certification is necessary in this case in order to avoid the possibility that plaintiffs' claims might become moot before final judgment if they move out of state or their personal circumstances change. *See Sosna v. Iowa*, 419 U.S. 393, 399 (1975) (holding class action may continue where representative's individual suit has become moot). The risk of mootness is particularly acute in Rule 23(b)(2) class actions, which seek only declaratory and injunctive relief. For example, in *Arizona Officials for English v. Arizona*, 520 U.S. 43 (1997), the court held that a lower court judgment in favor of the plaintiff must be vacated because her claims for injunctive relief had become moot, but the Court repeatedly noted that this result could have been avoided if the plaintiff had sought class certification instead of merely proceeding as an individual. *Id.* at 72 & n.27. Courts have thus rejected the "necessity" requirement to protect against the claims becoming moot. *See, e.g.*, *Dionne v. Bouley*, 757 F.2d 1344, 1356 (1st Cir. 1985); *Ledford v. Colbert*, No. 1:10-cv-706, 2012 WL 1207211, at *7 (S.D. Ohio Apr. 11, 2012); *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 326-27 (D. Mass. 1997); 2 *Newberg on Class Actions* at § 4:35.

### III.     Plaintiffs Satisfy All Four Requirements of Rule 23(a).

#### A.     Commonality and Typicality

Defendants argue that the proposed subclass of persons in Virginia who wish to marry a person of the same sex lacks commonality and typicality for the same reasons that it purportedly lacks ascertainable criteria. According to Defendants, the proposed class is "defined in individualized, subjective terms that turn on issues of their state of mind" and that "a judgment in favor of the named plaintiffs would have no effect" on the other members of the class. Opp. at 4.

8

As stated above, however, the references to individual states of mind are unnecessary and the Court may exercise its discretion to remove them from the class definition.

In arguing that there is no commonality or typicality, Defendants draw a false distinction between class members who have applied unsuccessfully for a marriage license and those who have not submitted applications because doing so would be futile. Defendants then attempt to draw an additional false distinction between couples like Plaintiffs Harris and Duff, who left a clerk's office after being explicitly told they could not marry, and other couples who submitted an actual marriage license application and were rejected. But all of these purported differences are irrelevant, because they do not create any conflict; the relief sought is the same regardless of whether a marriage license application was sought. This is thus not a case where "differences among members of a class are such that subclasses must be established." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 627 (1997) (internal quotation marks omitted). As the Fourth Circuit has held, Rule 23 does not "require[] that the plaintiff's claim and the claims of class members be perfectly identical or perfectly aligned" and class certification will be denied "when the variation in claims *strikes at the heart* of the respective causes of action." *Deiter v. Microsoft Corp.*, 436 F.3d 461 (4th Cir. 2006) (emphasis added); *see also Baby Neal*, 43 F.3d at 56 ("Where an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice."). Regardless of whether a same-sex couple has applied for a license or not, if the marriage bans are declared unconstitutional in this class action and their enforcement is enjoined, then any and all same-sex couples in Virginia will be able to marry and have their marriages recognized. This case will thus provide "common answers apt to drive resolution of

the litigation" for all class members. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).[3]

**B. Numerosity**

Defendants' arguments concerning numerosity are similarly based on their misguided attempt to carve up the subclass between couples who have unsuccessfully applied for a marriage license and those who have not done so because it would be futile. But, as described above, this is a distinction without a difference, and does not result in two separate subclasses. There is therefore no "first subclass" with only four members. *See* Opp. at 3.

Defendants offer no rebuttal to the evidence cited by Plaintiffs, based on the U.S. Census among other sources, that roughly 9,000 same-sex couples in Virginia either desire to or are already married. *See* Br. at 5 n.1. This evidence more than satisfies the requirement that "a good faith estimate of the class size" be established. *Newberg on Class Actions* at § 3:13. Indeed, the Fourth Circuit has held that "[w]here the only relief sought for the class is injunctive and declaratory in nature even speculative and conclusory representations as to the size of the class suffice as to the requirement of many." *Doe*, 529 F.2d at 645 (internal quotation marks, citations, and alteration omitted) (holding that numerosity requirement was satisfied where "based on an informal survey seventy women per month from the Charleston area were forced to go outside the state to terminate pregnancies"). Plaintiffs have met their burden to establish numerosity.

---

[3] Defendants make the puzzling assertion that because Plaintiffs Harris and Duff did not actually submit a marriage license application after being told by Defendant Roberts that they were ineligible to marry, a judgment in favor of the named plaintiffs "would have no effect" on the other class members. That is not the law. Indeed, a mere *two pages later* in the same brief State Defendants argue that class certification is "particularly unnecessary . . . because it can be assumed that if the court declares the statute or regulation unconstitutional then the responsible government officials will discontinue . . . enforcement." Opp. at 6 (internal quotation marks omitted).

### D. Adequacy of Representation

Defendants do not dispute that the Named Plaintiffs will adequately and diligently pursue the litigation, or that Plaintiffs' counsel is adequately equipped to litigate the class action. *See* Opp. at 5. Instead, they argue that the class will not adequately represent the interest of plaintiffs in a different case pending in the Eastern District of Virginia (*Bostic*), who – unlike Plaintiffs here – apparently intend to proceed on cross-motions for summary judgment without submitting any expert testimony in support of their claims. *See id.* But the law is clear that differences in litigation strategy between class representatives and other class members do not defeat class certification. "As a general rule, disapproval of the action by some class members will not preclude a class action on the ground of inadequate representation. . . . [C]ourts are skeptical of this type of alleged conflict even in mandatory class actions under Rule 23(b)(1) or (b)(2)." *Newberg* at § 3:65; *see also, e.g.*, *Californians for Disability Rights,* 249 F.R.D. at 348 (holding that "[a] difference of opinion about the propriety of the specific relief sought in a class action among potential class members is not sufficient to defeat certification"); *In re Motor Fuel Temperature Sales Practices Litig.*, 271 F.R.D. 221, 233 (D. Kan. 2010); *Fraser v. Major League Soccer, L.L.C.*, 180 F.R.D. 178, 181 (D. Mass. 1998); *Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569, 578 (D. Minn. 1995); *cf. Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010) ("For a conflict of interest to defeat the adequacy requirement, that conflict must be fundamental. A conflict is not fundamental when, as here, all class members share common objectives and the same factual and legal positions and have the same interest in establishing liability of defendants.") (internal quotation marks, citations, and alterations omitted). That *two* couples are pursuing their own litigation—and are doing so with apparently no intention of submitting expert evidence—is an insufficient reason to deny class certification

11

based on the adequacy of representation of plaintiffs and counsel who intend to make legal *and* factual arguments. Certainly the choice to present expert testimony does not represent a "fundamental" difference such that the *Bostic* plaintiffs seek a different result than Plaintiffs here. All share the same objective: invalidation of the marriage ban.

In any, event there is no longer even the potential for conflict with the litigation strategy of the *Bostic* plaintiffs because they have filed a request with this Court to be excluded from the certified class, and Plaintiffs do not object to an order granting their request. "[A]s a general matter, due process does not require that (b)(1) or (b)(2) class members be given an opportunity to opt out," but "the language of Rule 23 is sufficiently flexible to afford district courts discretion to grant opt-out rights in (b)(1) and (b)(2) class actions." *Eubanks v. Billington*, 110 F.3d 87, 94 (D.C. Cir. 1997); *accord McReynolds v. Richards-Cantave,* 588 F.3d 790, 800 (2d Cir. 2009); *Crawford v. Honig*, 37 F.3d 485, 487 n.2 (9th Cir. 1994); *Penson v. Terminal Transp. Co., Inc.*, 634 F.2d 989, 994 (11th Cir. 1981); *Newsome v. Up-To-Date Laundry, Inc.*, 219 F.R.D. 356, 364 (D. Md. 2004). Although certification should be granted whether or not the *Bostic* plaintiffs are excluded from the certified class, allowing the *Bostic* plaintiffs to opt out of the class should definitively put defendants' arguments regarding adequacy of representation to rest.

**IV.** **Class Certification is Appropriate Under Rule 23(b)(2) Because Defendant Roberts Acted or Refused to Act on Grounds that Apply Generally to the Entire Class of Unmarried Couples.**

Defendant Roberts contends that class certification is inappropriate under Rule 23(b)(2) because (1) Plaintiffs Harris and Duff did not fill out a formal marriage license application, (2) the class includes members who "theoretically" might "wish to apply for a marriage license in the City of Staunton as opposed to their own locality," and (3) he has no authority over

Virginia's recognition of the marriages of same-sex couples entered into in other jurisdictions. *See* Roberts Opp. at 2. None of these arguments suffices to defeat class certification.

Citing an affidavit of deputy clerk Lauren Moran, Defendant Roberts contends that "no proposed class representative has applied to Roberts for a marriage license, which was denied." *Id.* Even if the affidavit accurately described the encounter (it does not), the affidavit disingenuously blinks at reality and borders on absurd. Ms. Moran acknowledges that Plaintiffs inquired about marriage, that she personally sought counsel of Defendant Roberts, and that Mr. Roberts personally told Plaintiffs that "he had checked the statute and that at this time Virginia same sex couples could not get married." Aff. of L. Moran at ¶ 3. Upon being informed by the constitutional officer responsible for issuing marriage licenses that they could not obtain one, it would be entirely futile for Plaintiffs to have filled out an application, *id.* ¶ 6, asked about or tendered the marriage license tax, *id.* ¶¶ 7-8, or stated any of the other prerequisites for marriage under oath, *id.* ¶¶ 9-11. "The law does not require [] a futile act," *Townes v. Jarvis*, 577 F.3d 543, 547 n.1 (4th Cir. 2009), and thus Plaintiffs were not required to go through the hoops (and frankly the humiliation) identified in Ms. Moran's affidavit. *See also Munchak Corp. v. Cunningham*, 457 F.2d 721, 725 (4th Cir. 1972) ("Equity does not require the doing of a futile act as a condition to the granting of equitable relief."); *cf. Hairston v. McLean Trucking Co.*, 520 F.2d 226, 232 n.2 (4th Cir. 1975) (stating that law does not require a futile act as a precondition for relief in Title VII context). Indeed, given the marriage ban, even if Plaintiffs had *not* asked Mr. Roberts if they could get married, he *still* would be an appropriate defendant because of the futility doctrine. He is the constitutional officer charged with granting marriage licenses. By fulfilling his job duties in accord with the marriage ban, Defendant Roberts has "acted or refused

13

to act on *grounds that apply generally* to the entire class." Fed. R. Civ. P. 23(b)(2) (emphasis added).

Defendant Roberts' second argument is likewise unavailing. He seizes on the phrase "the entire class" from Rule 23(b)(2) to contend that he has not acted or refused to act with respect to those who "theoretically" might seek a marriage license in Staunton rather than "their own locality." *See* Roberts Opp. at 2. But this misconceives Rule 23(b)(2). The question is not whether he has taken actions with respect to each class member. Instead, the standard is whether he "acted or refused to act *on grounds that apply generally* to the entire class." Fed. R. Civ. P. 23(b)(2) (emphasis added). The *grounds* on which Defendant Roberts informed Plaintiffs Harris and Duff that they could not obtain a marriage license were their status as a same-sex couple. *See* Aff. of L. Moran at ¶ 3. Those *grounds*—plaintiffs' status as a same-sex couple—are applicable to the entire class, which consists solely of same-sex couples. *See* Advisory Committee notes to 1966 Amendment ("Action or inaction is directed to a class within the meaning of [Rule 23(b)(2)] even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class."); *Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010) (citing Advisory Committee notes for proposition that class may be certified even if not all members have yet been injured, provided grounds for potential injury have general application to the class); *Baby Neal* 43 F.3d at 56 ("[C]lass members can assert such a single common complaint even if they have not all suffered actual injury; demonstrating that all class members are *subject* to the same harm will suffice."); *cf. Griffin*, 570 F.2d at 1073 (noting that "not all class members need be aggrieved by or desire to challenge defendant's conduct in order for some to seek relief under (b)(2)") (internal quotation marks omitted); *Davis*, 497 F.2d at 146 (same).

Defendant Roberts' third argument—that he has no authority over Virginia's refusal to recognize marriages entered into in other jurisdictions—is irrelevant to the class certification question here.  Plaintiffs do not dispute this point; indeed, the Complaint limits the allegations against Defendant Roberts to those brought by "Plaintiffs Joanne Harris and Jessica Duff, and the unmarried members of the Plaintiff Class."  Compl. ¶¶ 89, 98.  The Complaint does not allege any claims against Roberts by those seeking to have their marriages from other jurisdictions recognized.  The cases Roberts cites for the proposition that (b)(2) class actions can only be brought against a *single* defendant are inapposite.  Those cases involved *defendant classes*, not *plaintiff classes* with more than one individual defendant each of whom has individually acted or refused to act with regard to the class (or, as here, the subclass).  *See Paxman v. Campbell*, 612 F.2d 848, 853 (4th Cir. 1980) (defendant class); *Thompson v. Bd. of Educ. of Romeo Cmty. Schs.*, 709 F.2d 1200, 1202 (6th Cir. 1983) (same).  And *Popoola v. Md-Individual Practice Ass'n, Inc.*, 230 F.R.D. 424, 432 (D. Md. 2005) is even further off the mark.  That case involved a plaintiff attempting to rely upon the "juridical link" doctrine to sue more than one defendant.  The court declined to extend the "juridical link" doctrine from its Rule 23 genesis to grant standing to sue a defendant whom plaintiff could not otherwise sue.  *Id.*

Here, Plaintiffs Harris and Duff clearly have standing to sue Roberts on behalf of the unmarried subclass; he is charged with granting marriage licenses, he has the authority to do so for any Virginian resident regardless of the locality of their residence in the state, and he refused to do so for Named Plaintiffs Harris and Duff on account of their sex and sexual orientation.  Defendant Roberts' suggestion that there can only ever be a *single* individual (as opposed to class) defendant in a (b)(2) action is belied by Fourth Circuit precedent upholding (b)(2) class certification on behalf of a plaintiff class against multiple individual defendants.  *See, e.g.*,

15

*Chisholm v. U.S. Postal Service*, 665 F.2d 482 (4th Cir. 1981) (plaintiff class suing the U.S. Postal Service and three individual postal officers).

### V.     Defendants' Request for Discovery is Baseless and Serves No Purpose but Delay.

"Ordinarily, affidavits and counter-affidavits, together with legal briefs, are sufficient to ready [class certification] issues for disposition by the court." 3 *Newberg* at § 7:8. And because "the extent of the knowledge of the plaintiff of claims of absent class members is irrelevant and an improper subject of discovery . . . the defendant ordinarily should not be permitted to engage in a broad fishing expedition." *Id.*

Defendants contend that "there are at least serious questions of adequacy of representation and conflicts within the first putative subclass sufficient to require discovery. And if the second and third subclasses are not dismissed for unascertainability on the pleadings, discovery should be permitted on them too." Opp. at 8-9.[4] But there is no relevant information that discovery could possibly produce, and Defendants do not try to explain what relevant information they could possibly seek. As explained above, Defendants' arguments regarding lack of ascertainability, commonality, numerosity, and typicality are all based on flawed legal premises. And Defendants' sole argument regarding adequacy of represenation—that Plaintiffs and counsel are pursuing a different litigation strategy (i.e., developing legal *and* factual arguments) than *two* couples who have filed another suit in a different district—is not one that courts recognize as a cognizable argument against adequacy of representation.

Defendants have articulated no cognizable argument in favor of discovery; for that reason, discovery would serve no purpose but to "harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 26(g)(1)(B)(ii). The Court should deny Defendants' request for discovery.

---

[4] As explained above, Defendants' contention that a third subclass exists is unfounded.

## V. Conclusion

The Court should certify this case as a class action pursuant to Rule 23(b)(2) and deny Defendants' request for discovery.

Dated: September 9, 2013

Respectfully submitted,

AMERICAN CIVIL LIBERTIES UNION
OF VIRGINIA FOUNDATION, INC.

_____/s/_____
Rebecca K. Glenberg (VSB No. 44099)
701 E. Franklin Street, Suite 1412
Richmond, Virginia 23219
Phone: (804) 644-8080
Fax: (804) 649-2733
rglenberg@acluva.org

LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.

Greg Nevins
730 Peachtree Street, NE, Suite 1070
Atlanta, Georgia 30308
Phone: (404) 897-1880
Fax: (404) 897-1884
gnevins@lambdalegal.org

Tara L. Borelli
3325 Wilshire Boulevard, Suite 1300
Los Angeles, California 90010
Phone: (213) 382-7600
Fax: (213) 351-6050
tborelli@lambdalegal.org

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

James D. Esseks
Amanda C. Goad
Joshua A. Block
125 Broad Street, 18th Floor
New York, New York 10004
Phone: (212) 549-2500
Fax: (212) 549-2650
jesseks@aclu.org
agoad@aclu.org
jblock@aclu.org

JENNER & BLOCK LLP

Paul M. Smith
Luke C. Platzer
Mark P. Gaber
1099 New York Avenue, NW Suite 900
Washington, D.C. 20001-4412
Phone: (202) 639-6000
Fax: (202) 639-6066
psmith@jenner.com
lplatzer@jenner.com
mgaber@jenner.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of September 2013, I effected service upon counsel for Defendants by electronically filing the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send a copy to the following:

E. Duncan Getchell, Jr.
Solicitor General of Virginia
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
(804) 786-7240
dgetchell@oag.state.va.us

Rita W. Beale
Deputy Attorney General
rbeale@oag.state.va.us

Allyson K. Tysinger
Senior Assistant Attorney General/Chief
atysinger@oag.state.va.us

Michael H. Brady
Assistant Solicitor General
mbrady@oag.state.va.us

*Counsel for Defendants Robert F. McDonnell and Janet M. Rainey*

Rosalie Pemberton Fessier
Timberlake, Smith, Thomas & Moses, P.C.
25 North Central Avenue
P.O. Box 108
Staunton, VA 24402-0108
(540) 885-1517
rfessier@tstm.com

*Counsel for Defendant Thomas E. Roberts*

September 9, 2013                                          /s/
                                                     Rebecca K. Glenberg (VSB No. 44099)
                                                     701 E. Franklin Street, Suite 1412
                                                     Richmond, Virginia 23219
                                                     Phone: (804) 644-8080
                                                     Fax: (804) 649-2733
                                                     rglenberg@acluva.org