IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| JOANNE HARRIS, *et al.*, | ) | |
| | ) | |
|  Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:13-cv-00077 |
| | ) | |
| ROBERT F. McDONNELL, JANET M. | ) | |
| RAINEY, and THOMAS E. ROBERTS, | ) | |
| in their official capacities | ) | |
| | ) | |
|  Defendants. | ) | |

### STATE DEFENDANTS' OPPOSITION TO
### PLAINTIFFS' MOTION TO AMEND PROPOSED CLASS DEFINITION

  COME NOW, State Defendants, Robert F. McDonnell, Governor of Virginia, and Janet M. Rainey, State Registrar of Vital Records, in their official capacities, by counsel, in opposition to Plaintiffs' Motion to Amend Proposed Class Definition, (Doc. 79), and state as follows. Plaintiffs, following the hearing on October 29, (Doc. 76), apparently in response to objections raised to their reliance upon "wish" as a defining class characteristic, (Doc. 27, 4 of 15), proposed a new class definition. (Docs. 79, 1 of 3; Doc. 80, 2 of 6). Although Fed. R. Civ. P. 15(a)(2) permits courts to "freely permit" amendment of a complaint, Plaintiffs' proposed amendment should be denied as futile. *See Laber* v. *Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc); *Johnson* v. *Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986) (explaining that an amendment is futile "when the proposed amendment is clearly insufficient" to remedy the identified defect in the pleading); *see, e.g.*, *Balas* v. *Huntington Ingalls Indus.*, 711 F.3d 401, 409-10 (4th Cir. 2013) (affirming denial of leave to amend on ground of futility).

# ARGUMENT

Though they purport to propose two subclasses, Plaintiffs in fact propose simply to represent "[a]ll same-sex couples in Virginia . . . ." (Doc. 79, 1 of 3; Doc. 80, 2 of 6). The proposed amendment fails to cure the subjectivity of their class definition, because whether any particular person is presently a member of a same-sex "couple" in Virginia is a matter beyond any objective ascertainment. This proposed amendment increases the extraordinary breadth and non-cohesiveness of the proposed class, which arguably comprises a majority of persons who neither have been married to a person of the same sex in another jurisdiction nor presently desire to marry a person of the same sex. Accordingly, were this class definition adopted, concerns regarding not forcing class membership in a non-opt out class on those with no legal interest in the relief sought, and the serious due process concerns raised by certifying a disappearing class, would remain. Plaintiffs' motion to amend should therefore be denied as futile.

## I. Whether a Person Is Party to a Same-Sex Couple in Virginia Cannot Be Objectively Ascertained and State Defendants Should Not Be Obliged To Litigate Against This Proposed Class.

Whether or not any two people of the same sex in Virginia are a "couple" depends entirely upon a subjective standard, i.e., each individual's state of mind regarding another person's relational status. A class ostensibly "identifiable" or "ascertainable," both now and at all future times, only by a present state of mind is improper, even for classes brought under the (b)(2) prong of Rule 23. *See Alliance to End Repression* v. *Rochford*, 565 F.2d 975, 977 n.6 (7th Cir. 1977) (recognizing "that there is a 'definiteness' requirement implied in Rule 23(a)" in the context of a civil rights claim); *see, e.g.*, *Jamie S.* v. *Milwaukee Pub. Schs.*, 668 F.3d 481, 493 (7th Cir. 2012) (holding a "class . . . both fatally indefinite and lack[ing] the commonality required by Rule 23(a)(2)" though "certified as a class action for injunctive and declaratory relief under Rule 23(b)(2)"); *see also Oshana* v. *Coca-Cola Co.*, 472 F.3d 506, 513-14 (7th Cir. 2006)

(explaining that for a sufficiently definite class to exist, the members of it must generally share the same grievance). The reason that ascertainability is required is plain: "Since the outcome of a class action suit is res judicata as to all unnamed class members, it is crucial to have a clear definition of what groups or individuals are members of the class." *Alliance to End Repression*, 565 F.2d at 977 n.6. Accordingly, "wildly indefinite class definition under Rule 23"—those whose actual membership will forever elude ascertainment for want of objective criteria—are not permitted. *Jamie S.*, 668 F.3d at 496; *see Rahman* v. *Chertoff*, 530 F.3d 622, 626 (7th Cir. 2006) (rejecting the argument "that the classes' membership will be hard to pin down . . . is irrelevant because the district court certified them under Rule 23(b)(2) rather than Rule 23(b)(3)" and dismissing the suggestion that the 1966 Advisory Committee Note also relied upon by Plaintiffs here permitted certification of any class whose "members could [not] be enumerated eventually"). Although Plaintiffs claim that objectively unascertainable classes are permitted as a matter of course under Rule 23(b)(2), that is plainly not so. *See Grovatt* v. *St. Jude Med'l Inc.*, 425 F.3d 1116, 1122 (8th Cir. 2005) (noting that the "'members of a (b)(2) class are generally bound together through "preexisting or continuing legal relationships" or by some significant common trait such as race or gender.'" (quoting *Holmes* v. *Cont'l Can Co.*, 706 F.2d 1144, 1155 n.8 (11th Cir. 1983))). "Subsection (b)(2) 'by its terms, clearly envisions a class defined by the homogeneity and cohesion of its members' grievances, rights and interests.'" *Holmes*, 706 F.2d at 1155 (citation omitted).

## II. All Same-Sex Couples in Virginia Should Not Be Made a Party to This Suit Challenging Virginia's Marriage Laws Because the Class Lacks Any Cohesiveness on Plaintiffs' Own Evidence.

To satisfy the requirements of Fed. R. Civ. P. 23(b)(2), and to maintain this suit as a class action, the Plaintiffs are required to demonstrate that all or most of the proposed class are presently being denied a claimed right. *See Maldonado* v. *Ochsner Clinic Found.*, 493 F.3d 521,

3

525 (5th Cir. 2007) ("Rule 23(b)(2) certification is also inappropriate when the majority of the class does not face future harm."); *Kohen* v. *Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*, 571 F.3d 672, 677 (7th Cir. 2009) (Posner, J.) (explaining that class definitions should not be "so broad that it sweeps within it persons who could not have been injured by the defendant's conduct," and thus "a class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant"). Hence, "Rule 23(b)(2) demands a certain cohesiveness among class members with respect to their injuries, the absence of which can preclude certification." *Shook* v. *Bd. of Cnty. Comm'rs*, 543 F.3d 597, 604 (10th Cir. 2008). In framing their initial proposed class with reference to the desire to marry, Plaintiffs recognized this problem. Now, having run into impermissible subjectivity, they seek to deny it.

Cohesiveness is no idle requirement, but serves interests in both class manageability and due process. *See id.* (explaining that the value of class certification under Rule 23(b)(2) is defeated where a "time-consuming inquiry into individual circumstances . . . of class members or groups of class members" is necessary to application of the judgment); *Blackman* v. *Dist. of Columbia*, 633 F.3d 1088, 1094 (D.C. Cir. 2011) (Brown, J., concurring) ("cohesiveness is a significant touchstone of a (b)(2) class," a "requirement [that] stems from the understanding that even unnamed class members are bound by a Rule 23(b)(2) class action without the opportunity to opt out"). And the non-opt out character of Rule 23(b)(2) classes demands that observance of the cohesiveness requirement be more exacting. *See Grovatt*, 425 F.3d at 1121 ("Because 'unnamed members are bound by the action without the opportunity to opt out' of a Rule 23(b)(2) class, even greater cohesiveness generally is required than in a Rule 23(b)(3) class.'" (citation omitted)); *accord Gates* v. *Rohm & Haas Co.*, 655 F.3d 255, 263-64 & n.12 (3d Cir. 2011) (collecting authority on this point). Where, as here, the class is objectively unascertainable, and

res judicata could not be effectively invoked by Defendants, simple fairness, and considerations of due process, defeat the class. *See Barnes* v. *Am. Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998) ("Because of the cohesive nature of the class, Rule 23(c)(3) contemplates that all members of the class will be bound. Any resultant unfairness to the members of the class was thought to be outweighed by the purposes behind class actions: eliminating the possibility of repetitious litigation . . . .").

As was argued at the October 29 hearing, Plaintiffs' initial proposed class lacks any cohesion. The proposed broadening plainly does nothing to remedy this flaw, as there is no evidence of any type offered regarding "all same-sex couples in Virginia" and certainly none relevant to their desire to marry. To show the existence and number of couples they intend to represent, Plaintiffs began with the number of same-sex households estimated in Virginia by the 2010 U.S. Census, approximately 15,000. They then applied a percentage taken from a national survey done by the Pew Research Center. *See* (Doc. 27, 5 of 15 n.1). With regard to the Census figure, no credible enumeration of these households exists, the number being based only upon a revised estimate aimed at correcting what is acknowledged to be a flawed enumeration. *See* U.S. Census Bureau, *Households & Families: 2010* 1-2 & n.2 (Apr. 2012), http://www.census.gov/prod/cen2010/briefs/c2010br-14.pdf; Martin O'Connell & Sarah Feliz, '*Same-sex Couple Household Statistics From the 2010 Census*, SEHSD Wkg. Paper No. 2011-26 at 2, 27, 29 (Sept. 27, 2011), http://www.census.gov/hhes/samesex/files/ss-report.doc.

The Pew Survey relied upon by Plaintiffs reported that "[o]verall, a total of 60% of LGBT respondents are either married or would like to marry one day," but noted that among those "currently married," which accounted for 16% of the respondents, most of them were "bisexuals in opposite-sex relationships." Pew Research Ctr., *A Survey of LGBT Americans* 64,

71 (June 13, 2013), http://www.pewsocialtrends.org/files/2013/06/SDT_LGBT-Americans_06-2013.pdf. The survey also reported that "roughly half of unmarried gay men (56%) and lesbians (58%)" said "they want to get married some day," but failed to elicit whether the persons asserting this general desire to marry were in a relationship with a person of the same sex such that entry into a same sex marriage was a concrete, and not merely speculative, possibility. *Id.* at 71. The survey further found that only 54% of respondents were either married, living with a partner, or in a "committed relationship," a percentage that is substantially reduced by the fact that many of these persons, approximately 40%, "are in opposite-sex relationships." *Id.* at 70, 82. To sum up, the 60% figure relied upon by Plaintiffs was given in response to a question that includes a non-specific desire to marry in the future, counted those currently married to or desiring to marry someone of the opposite sex, and drew from a national sample, not one of Virginians. Consequently, it cannot purport to reflect the percentage of same-sex couples in Virginia that are married under the laws of another jurisdiction or desire to marry each other in Virginia. At least some of the 60% clearly are not and have no interest in entering into a same-sex marriage (and thus their views are not relevant in the least), and still others plainly are not part of a couple (and thus are not properly reflective of the class either). This survey thus fails to provide a non-speculative basis for concluding that even the majority of "same-sex couples in Virginia" share a common legal interest in this litigation. The class is thus fundamentally non-cohesive.

Contrary to Plaintiffs' claims, sweeping, non-cohesive class definitions have been routinely rejected by other courts, including claims under Rule 23(b)(2) that seek declaratory and injunctive relief. *See, e.g.*, *Jamie S.*, 668 F.3d at 493 (noting that the district court "properly rejected [a] sweeping class definition" proposed by plaintiffs, who "initially sought to represent

6

all students *eligible for* special education and related services from MPS"); *Shook*, 543 F.3d at 606 n.5 (concluding that in "broadening the scope of the class, plaintiffs' alternative proposed class moves in the wrong direction," explaining that a proposed class definition that included all persons who could possibly be affected by the policy being challenged "seems overbroad when the class includes a majority of people who are not at risk" of actually being subject to the challenged policy, and thus "also raises concerns about whether defendants acted on 'grounds that apply generally to the class'").

This analysis is not undercut by *DG* v. *Devaughn*, 594 F.3d 1188 (10th Cir. 2010), *Baby Neal* v. *Casey*, 43 F.3d 48 (3d Cir. 1994), or other cases cited by Plaintiffs, most of which involve a claim of systemic violation of rights and some form of custodial relationship between the State and the proposed class, usually inmates or children for whom the state stands *in loco parentis*. Many of the cases relied upon are "a relic of a time when the federal judiciary thought that structural injunctions taking control of executive functions were sensible" and consistent with the judicial role. *See Rahman*, 530 F.3d at 626. The Tenth Circuit's cohesiveness determination in *DeVaughn*, 594 F.3d at 1197-98, was unique to the systemic nature of the injury, the proposed remedy, and the fact that the plaintiffs were minor wards of the State who lack the legal capacity to harbor a non-cohesive interest contrary to what was determined to be in their best interest. The same was the case in *Baby Neal*, 43 F.3d at 58-60; *but see M.D.* v. *Perry*, 675 F.3d 832, 835, 839, 845-46 (5th Cir. 2012) (vacating certification of a "class of all children who are now and all those who will be in the State[ of Texas'] long-term foster care" system, seeking "declaratory and injunctive relief to redress alleged class-wide injuries caused by systemic deficiencies in Texas's administration," on the ground that, inter alia, the class "lacked cohesiveness under Rule 23(b)(2)").

7

*Griffin* v. *Burns*, 570 F.2d 1065 (1st Cir. 1978), and *Davis* v. *Weir*, 497 F.2d 139 (5th Cir. 1974), early cases cited by Plaintiffs that did address cohesiveness under Rule 23(b)(2), actually support State Defendants' position. In *Griffin*, the First Circuit concluded that cohesiveness was shown where everyone in the class had actually "had his vote quashed simply because it was cast by absentee or shut-in ballot," an outcome it was unwilling to assume anyone was indifferent to. Furthermore, the "vast majority" of those in the class had voted for the candidate who had lost the primary whose result was being challenged. 570 F.2d at 1073-74. In *Davis*, the Fifth Circuit reversed a judgment of the district court certifying a class of persons who were "not aggrieved" by the challenged law, concluding that the class was "overly inclusive." 497 F.2d at 147.

The Fifth Circuit in 1975 did advise a district court on remand that Rule 23(b)(2) may be satisfied where not "all members of the (b)(2) class [are] aggrieved by or desire to challenge the defendant's conduct," provided "that the conduct or lack of it which is subject to challenge be premised on a ground that is applicable to the entire class." *Jones* v. *Diamond*, 519 F.2d 1090, 1100 (5th Cir. 1975). But these statements were dicta and regarded a challenge to the conditions of confinement on behalf of a class of persons who were subject to incarceration in a particular jail. *Id.* at 1093-94, 1099. The nature of that claim and of the class presented no possibility of the non-cohesiveness present here, for anyone incarcerated in that jail would by definition be subject to its conditions, against their will, and so can be presumed to desire some remedy; on the other hand, all same-sex couples in Virginia cannot be assumed to desire to marry when the only evidence is to the contrary.

In the other cases cited by Plaintiffs, the breadth of the class definition was not contested. In *Ayers* v. *Fordice*, 111 F.3d 1183, 1190 n.2 (5th Cir. 1997), the definition of the class — "all black citizens residing in Mississippi, whether students, former students, parents, employees, or

8

taxpayers, who have been, are, or will be discriminated against on account of race in . . . the universities operated by said Board of Trustees" — *id.* (quoting *Ayers* v. *Allain*, 674 F. Supp. 1523, 1526 (N.D. Miss. 1987)), could have been challenged as a fail-safe class. Similarly, in *United States* v. *Alabama*, 271 F. App'x 896, 898 (11th Cir. 2008) (per curiam), defining the class for "a desegregation lawsuit involving the public universities in Alabama" as including "'all black citizens of Alabama and all past, present and future students, faculty, staff and administrators of Alabama State University and Alabama A & M University,'" was never challenged. *See also Women Prisoners of Dist. of Columbia Dep't of Corrs.* v. *Dist. of Columbia*, 877 F. Supp. 634, 638-39 (D.D.C. 1994) (not considering the cohesiveness of the class). Accordingly, Plaintiffs have failed to produce a single published opinion holding that a class of plaintiffs, a majority of whom lack a concrete, present interest or non-abstract desire for the relief sought, is sufficiently cohesive to be certified under Rule 23(b)(2).

Finally, certifying this proposed class—one that raises serious due process concerns for Defendants and has not been shown to be cohesive—would be wholly unnecessary. Should this Court enter declaratory and/or injunctive relief against Defendants "any need for class certification disappears," *Sandford* v. *R.L. Coleman Realty Co.*, 573 F.2d 173, 179 (4th Cir. 1978), inasmuch as any injunctive relief will necessarily "'benefit not only the claimant but all other persons subject to the practice or the rule under attack.'" *Thomas* v. *Washington Cnty. Sch. Bd.*, 915 F.2d 922, 925-26 (4th Cir. 1990) (quoting *Sandford*, 573 F.3d at 178). Because there are fatal ascertainability issues, and what evidence is before the Court on the issue shows a significant lack of cohesion amongst the proposed class, the purposes behind class actions are not served by certification, and the resultant unfairness is particularly acute.

## CONCLUSION

Wherefore, for all the foregoing reasons, Plaintiffs' Motion to Amend Proposed Class Definition should be denied. (Doc. 79).

                                                Respectfully Submitted,

                                                ROBERT F. McDONNELL and
                                                JANET M. RAINEY,
                                                in their official capacities

By:              /s/
                  E. Duncan Getchell, Jr.
                  Solicitor General of Virginia
                  (VSB No. 14156)
                  Office of the Attorney General
                  900 East Main Street
                  Richmond, Virginia 23219
                  (804) 786-7240 – Telephone
                  (804) 371-0200 – Facsimile
                  dgetchell@oag.state.va.us

Kenneth T. Cuccinelli, II
Attorney General of Virginia

Norman A. Thomas, VSB #20632
Senior Appellate Counsel
E-mail: nthomas@oag.state.va.us

Rita W. Beale, VSB #37032
Deputy Attorney General
E-mail: rbeale@oag.state.va.us

Allyson K. Tysinger, VSB #41982
Senior Assistant Attorney General/Chief
E-mail: atysinger@oag.state.va.us

Michael H. Brady, VSB #78309
Assistant Solicitor General
E-mail: mbrady@oag.state.va.us

Case 5:13-cv-00077-MFU-RSB Document 83 Filed 11/05/13 Page 11 of 11 Pageid#: 894

## CERTIFICATE OF SERVICE

      I hereby certify that on the 5th day of November 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a copy to counsel of record.

                                               /s/
                                          E. Duncan Getchell, Jr.

11