IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| JOANNE HARRIS and JESSICA DUFF, and CHRISTY BERGHOFF and VICTORIA KIDD, on behalf of themselves and all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> ROBERT F. MCDONNELL, in his official capacity as Governor of Virginia; JANET M. RAINEY, in her official capacity as State Registrar of Vital Records; THOMAS E. ROBERTS, in his official capacity as Staunton Circuit Court Clerk, <br><br> *Defendants*. | No. 5:13-cv-00077 |

**REPLY IN SUPPORT OF
PLAINTIFFS' MOTION TO AMEND PROPOSED CLASS DEFINITION**

Plaintiffs' proposed amended class definition fits squarely within hornbook class action law.  In opposing this definition, Defendants advance novel and farfetched arguments that have no basis in the text Rule 23(b)(2) and conflict with clearly established case law.  Defendants contend that they will face a parade of horribles if this remarkably straightforward class is certified because 1) if the class is certified and Defendants prevail on the merits, they claim it will be impossible to know whether a future litigant is bound by the judgment, and 2) the class definition includes some couples who might not yet (or might not ever) wish to marry (and so apparently those people are *opposed* to being granted the *right* to ever do so).   The law does not support their position and it should be rejected.

1

A.  **Status as a "Same-Sex Couple" is not a "State of Mind"; It is an Objective, Ascertainable Fact.**

Defendants make the outlandish argument that for lesbians and gay men, being a couple is not an objective status, but instead a "state of mind." Opp. at 2. Defendants even use quotation marks around the word "couple" for extra measure. *Id.* Like the underlying marriage bans that Plaintiffs seek to challenge, Defendants' argument "demeans the couple, whose moral and sexual choices the Constitution protects" and "humiliates tens of thousands of children now being raised by same-sex couples." *United States v. Windsor*, 133 S. Ct. 2675, 2694 (2013). In essence, Defendants argue that because they have been *so successful* in "diminishing the stability and predictability of basic personal relations" of same-sex couples, *id.*, they can now defeat certification precisely because the couples lack a legal certificate proving their relationship. Moreover, one of the proposed classes is on behalf of same-sex couples who are already married and therefore *do* have an objectively verifiable marriage certificate.

Unsurprisingly, Defendants cite no authority for the proposition that class actions cannot be certified on behalf of same-sex couples. Indeed, courts have routinely certified classes under Rule 23(b)(2) based on religious affiliation—a status that could also be characterized as a "state of mind" under Defendants' rubric. *See, e.g.*, *Mayweathers v. Newland*, 258 F.3d 930, 933 (9th Cir. 2001) (certified class of all Muslim inmates); *Abdul-Malik v. Coombe*, No. 96 Civ. 1021 (DLC), 1996 WL 706914, at *1 (S.D.N.Y. Dec. 6, 1996) (certifying Rule 23(b)(2) class of all Muslim prisoners); *Monroe v. Bombard*, 422 F. Supp. 211, 218-19 (S.D.N.Y. 1976) (certifying Rule 23(b)(2) class of Sunni Muslim prisoners).

Defendants point to a series of Seventh Circuit cases to support their claim that status as "same-sex couples" is "wildly indefinite." Opp. at 2-3. These cases did not involve same-sex couples and could not be further afield from the proposed class action in this case. In *Jamie S v.*

*Milwaukee Public Schools*, 668 F.3d 481, 495 (7th Cir. 2012), the court considered a class of students eligible for special education services; included among the class were those whom the school district had failed to identify as eligible and thus remained unidentified. The court rejected the definition as too indefinite: "How is the court to decide whether there was a reason to believe *in 2000-2005* that a presently unidentified child was *potentially eligible* for special education services from MPS? . . . [T]here is no way to know or readily ascertain who is a member of the class." *Id.* (emphasis in original).

Unlike in *Jamie S.*, where the class was defined *by the fact that its members were unknown*, here a couple's status is entirely knowable (and capable of objective proof). If Plaintiffs prevail, circuit court clerks in Virginia will face no difficulty determining whether the injunction applies to the two men or two women appearing before them seeking a marriage license. There is therefore no "serious due process concern," Opp. at 2 from the purported un-ascertainability of the proposed class for future "res judicata" purposes, *id.* (quoting *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 n.6 (7th Cir. 1997)). The "concern" is, in fact, decidedly un-serious.[1]

Defendants' reliance on *Rahman v. Chertoff*, 530 F.3d 622 (7th Cir. 2006), *see* Opp. at 3, is even further off the mark. That case concerned a class of those "delayed in reentering the United States from abroad as a result of watch lists maintained by the Department of Homeland Security." *Id.* at 623. The court held that the class was untenable because the definition did not

---

[1] It is difficult to understand why Defendants oppose certification so adamantly. It cannot seriously be contended that if Defendants prevail (a result that inevitably will require Fourth Circuit and possibly Supreme Court opinions to obtain) there will be an avalanche of new cases filed requiring mini-trials about whether the litigants were "same-sex couples" at the time of the present litigation and thus precluded. The precedential effect of such a judgment alone will prevent such an occurrence. On the other hand, if the class is *not* certified there is a significant concern that the class could be deprived of the benefit of a favorable judgment if the plaintiffs' individual claims become mooted for reasons outside their control.

identify what specific policies were being challenged, and thus "[t]he classes grow or shrink with the plaintiffs' contentions as the case progresses," "[t]he word "detention" [in the class definition] is undefined," "the state-secrets privilege is bound to cover some of the" policies and thus "the court will not know who is in the class and who is not," "it is . . . uncertain whether any particular challenged practice has affected any particular named plaintiff, and whether at least one named representative plaintiff has standing to challenge each practice that eventually becomes contested," and "it is impossible to tell whether all of the named plaintiffs are . . . members of the class they purport to represent [or whether] the judges are in the class, and should have disqualified themselves, but didn't know it." *Id.* at 625-26.

Here, there are no state secrets. The challenged laws are identified. The named plaintiffs are members of the class. The named plaintiffs have standing to challenge the marriage bans. And a couple's status can be put to proof. It is difficult to conceive a more straightforward 23(b)(2) class. Nothing about *Rahman* bears any relation to the circumstances of this case.

Finally, Defendants' quotation from *Grovatt v. St. Jude Med. Inc.*, 425 F.3d 1116, 1122 (8th Cir. 2005) is perplexing. *See* Opp. at 3. There, the court noted that "members of a (b)(2) class are generally bound together through . . . some significant common trait such as race or gender." The plaintiffs in the proposed classes in this case are also bound together through a significant common trait—they are all same-sex couples. Defendants' suggestion that the class members do not share "significant common trait[s]" reflects a continued "failure to appreciate the extent of the liberty at stake" for these couples and their families. *Lawrence v. Texas*, 539 U.S. 558, 567 (2003).

4

**B.     The Proposed Class is Cohesive.**

Defendants labor at length to contest the "cohesiveness" of the proposed class because they contend it includes some same-sex couples who might not now (or ever) intend to get married. But it is hornbook law that "[a]ll the class members need not be aggrieved by or desire to challenge defendant's conduct in order for some of them to seek relief under Rule 23(b)(2). What is necessary is that the challenged conduct or lack of conduct be premised on a ground that is applicable to the entire class." Wright & Miller, et al., *Federal Prac. & Proc.* § 1775 (footnote omitted) (collecting cases). "There is no requirement . . . that the defendants' conduct be damaging or offensive to every member of the proposed class." *Hess v. Hughes*, 500 F. Supp. 1054, 1061-62 (D. Md. 1980).

In the teeth of this black-letter law, Defendants attempt to distinguish the facts of the particular cases cited by Plaintiffs or implausibly argue that the propriety of the class definition was not contested. But despite pages' worth of contortions, Defendants do not cite any case that contradicts the hornbook law relied upon by Plaintiffs.

Instead, Defendants make the bizarre argument that Plaintiffs have not "demonstrate[d] that all or most of the proposed class are presently being denied a claimed right" because a large number of same-sex couples have not actually attempted to get married in Virginia. Opp. at 3; *see also* Opp. at 4 (quoting *Kohen*, 571 F.3d at 677). But that is because Virginia's marriage bans clearly make any such application futile. Even the *Kohen* case cited by Defendants' refutes their own argument. As Judge Posner explained:

> What is true is that a class will often include persons *who have not been injured by the defendant's conduct*; indeed this is almost inevitable because at the outset of the case many of the members of the class may be unknown, or if they are known still the facts bearing on their claims may be unknown. Such a possibility or indeed inevitability does not preclude class certification.

5

*Id.* at 677 (emphasis added). The court's statement in *Kohen* that "if the definition is so broad that it sweeps within it persons who *could not have been injured* by the defendant's conduct, it is too broad," *id.*, is not applicable here. Plaintiffs only seek injunctive and declaratory relief granting same-sex marriages on the same terms as different-sex marriages. Even couples that do not now want to get married *could* wish to at some point (or could wish to have the *right* to do so). Finally, Defendants cannot seriously contend that the majority of same-sex couples in Virginia do not support marriage equality, particularly given polling data showing that the majority of *all* Virginians support marriage equality.[2]

Defendants' arguments have no basis in the case law applying Rule 23(b) or in common sense . If *this* class is not a proper Rule 23(b) class, then no class could ever be.

C.      **Class Certification is Necessary to Ensure Class-wide Relief and to Avoid Mootness**.

In contrast to the farfetched and legally unsupported arguments made by Defendants in opposing certification, Plaintiffs have a real need for certification that is firmly grounded in the case law and recent history. *See generally* Wright & Miller, et al., *Federal Prac. & Proc.* § 1785.2; *Westcott v. Califano*, 460 F. Supp. 737, 746 (D. Mass. 1978) (explaining that "class certification is not an empty formality, even in a case where declaratory and injunctive relief

---

[2] Defendants quibble with the Census data and polling research the Plaintiffs' Motion for Class Certification cited as evidence establishing that the class met the numerosity requirement of Rule 23(a). But the fact that the data is based on a "revised estimate," Opp. at 5, is irrelevant. "A good faith estimate of the class size is sufficient . . . ." 1 *Newberg on Class Actions* at § 3.13. Moreover, the Census data and the survey data have nothing to do with cohesiveness—they instead are relevant to numerosity. Defendants' criticism that the class is non-cohesive because the Pew Poll includes some bisexual respondents who are in "opposite-sex relationships" is bizarre—the class, by definition, does not include these people. Indeed, all of Defendants' objections to the data center on the fact that it allegedly overestimates the size of the class of same-sex couples. *See* Opp. at 5-6. But Defendants conceded at oral argument that the class met the numerosity requirement. And as discussed above, the law is clear: not all class members must desire to obtain marriage licenses.

would automatically inure to the benefit of those similarly situated with the plaintiffs"), *aff'd*, 433 U.S. 76 (1979).

First, certification would avoid the legal uncertainty that followed *Hollingsworth v. Perry*, 133 S. Ct. 2652 (2013), about the precedential effect of the district court's decision in light of California's decision not to appeal. Although the current administration has been vigorously defending Virginia's marriage bans, Defendants cannot predict what the incoming administration will do in the event that the district court holds the marriage bans unconstitutional.

Even more importantly, there is a danger that if the circumstances of the individual plaintiffs change over the next couple of years (e.g., through relocation, death, or separation/divorce), their claims could become moot before all appeals are exhausted and a final judgment is entered. The Supreme Court has all but instructed litigants to seek certification in order to prevent claims from becoming moot in precisely these circumstances. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 72 & n.27 (1997); *see generally* Wright & Miller, et al., *Federal Prac. & Proc.* § 1785.2 (collecting cases).

In short, there is no reason to think that granting certification would harm Defendants in any way and there are at least two good reasons to think that denying certification could significantly interfere with Plaintiffs' ability to protect the rights of other same-sex couples in Virginia.[3]

## Conclusion

The Court should grant Plaintiffs' Motion to Amend the Class Definition.

---

[3] Defendants countered in their papers and at oral argument that they will apply the injunctive relief statewide regardless of certification and that if a mootness issue materializes, Plaintiffs could add new plaintiffs whose claims were not moot. While this is not the best approach, if certification is denied, the Court should at the very least require Defendants to stipulate as such.

Dated: November 12, 2013

Respectfully submitted,

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF VIRGINIA FOUNDATION, INC. | AMERICAN CIVIL LIBERTIES UNION FOUNDATION |

_____/s/_____
Rebecca K. Glenberg (VSB No. 44099)
701 E. Franklin Street, Suite 1412
Richmond, Virginia 23219
Phone: (804) 644-8080
Fax: (804) 649-2733
rglenberg@acluva.org

James D. Esseks, *pro hac vice*
Amanda C. Goad, *pro hac vice*
Joshua A. Block, *pro hac vice*
125 Broad Street, 18th Floor
New York, New York 10004
Phone: (212) 549-2500
Fax: (212) 549-2650
jesseks@aclu.org
agoad@aclu.org
jblock@aclu.org

LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.

Gregory R. Nevins, *pro hac vice*
Tara L. Borelli, *pro hac vice*
730 Peachtree Street, NE, Suite 1070
Atlanta, Georgia 30308
Phone: (404) 897-1880
Fax: (404) 897-1884
gnevins@lambdalegal.org

JENNER & BLOCK LLP

Paul M. Smith, *pro hac vice*
Luke C. Platzer, *pro hac vice*
Mark P. Gaber, *pro hac vice*
1099 New York Avenue, NW Suite 900
Washington, D.C. 20001-4412
Phone: (202) 639-6000
Fax: (202) 639-6066
psmith@jenner.com
lplatzer@jenner.com
mgaber@jenner.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

   I hereby certify that on the 12th day of November 2013, I effected service upon counsel for Defendants by electronically filing the foregoing with the Clerk of the Court using the CM/ECF system.

E. Duncan Getchell, Jr.
Solicitor General of Virginia
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
(804) 786-7240
dgetchell@oag.state.va.us

Rita W. Beale
Deputy Attorney General
rbeale@oag.state.va.us

Allyson K. Tysinger
Senior Assistant Attorney General/Chief
atysinger@oag.state.va.us

Michael H. Brady
Assistant Solicitor General
mbrady@oag.state.va.us

*Counsel for Defendants Robert F. McDonnell and Janet M. Rainey*

Rosalie Pemberton Fessier
Timberlake, Smith, Thomas & Moses, P.C.
25 North Central Avenue
P.O. Box 108
Staunton, VA 24402-0108
(540) 885-1517
rfessier@tstm.com

*Counsel for Defendant Thomas E. Roberts*

November 12, 2013               /s/
                     Rebecca K. Glenberg (VSB No. 44099)
                     701 E. Franklin Street, Suite 1412
                     Richmond, Virginia 23219
                     Phone: (804) 644-8080
                     Fax: (804) 649-2733
                     rglenberg@acluva.org