**In the United States District Court**
**For the Western District of Virginia**
Harrisonburg Division

| | |
|---|---|
| JOANNE HARRIS and JESSICA DUFF, and CHRISTY BERGHOFF and VICTORIA KIDD, on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>ROBERT F. MCDONNELL, in his official capacity as Governor of Virginia; JANET M. RAINEY, in her official capacity as State Registrar of Vital Records; THOMAS E. ROBERTS, in his official capacity as Staunton Circuit Court Clerk,<br><br>*Defendants*. | No. 5:13-cv-00077 |

**NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs respectfully submit the following notice of supplemental authority in support of their Motion for Summary Judgment filed on September 30, 2013 (ECF No. 44). Plaintiffs' brief in support of summary judgment was docketed on October 10, 2013 (ECF No. 62: Defendants' briefs in opposition were filed on October 24, 2013 (ECF No. 73, 74); and Plaintiffs' reply brief was filed on November 7, 2013 (ECF No. 86). Plaintiffs filed previous notices of supplemental authority on November 19, 2013 (ECF No. 89) and December 20, 2013 (ECF No. 92).

In *Kitchen v. Herbert*, 2:13-cv-00217-RJS (D. Utah Dec. 20, 2013) (attached as Ex. A), the U.S. District Court for the District of Utah granted the plaintiffs' motion for summary judgment and held that Utah's statutory and constitutional bans on allowing same-sex couples to marry and on recognizing marriages validly entered by same-sex couples in other jurisdictions

1

violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment. The court then entered a final judgment declaring the marriage bans unconstitutional and enjoining state officials from enforcing them. Ex. A at 53.

First, the court rejected Utah's argument that the reasoning of the Supreme Court's decision in *United States v. Windsor*, 133 S. Ct. 2675 (2013), is limited to the federal context and cannot be applied to challenge state laws. Ex. A at 11-13. Instead, the court concluded that the logic of the *Windsor* decision applies to state marriage laws and that "the important federalism concerns at issue here are nevertheless insufficient to save a state-law prohibition that denies the Plaintiffs their rights to due process and equal protection under the law." Ex. A at 13

Second, the court rejected Utah's argument that the Supreme Court's summary affirmance in *Baker v. Nelson*, 409 U.S. 810 (1972), remains controlling precedent. Ex. A at 14-16. The court noted that "the Supreme Court has stated that a summary dismissal is not binding 'when doctrinal developments indicate otherwise,'" and concluded that "several doctrinal developments in the Court's analysis of both the Equal Protection Clause and the Due Process Clause as they apply to gay men and lesbians demonstrate that the Court's summary dismissal in *Baker* has little if any precedential effect today." *Id.* at 14 (citations omitted). Although Utah cited some lower court decisions that continued to follow *Baker*, the court noted that "all of these cases were decided before the Supreme Court issued its opinion in *Windsor*." *Id.* at 15. The court concluded that, "[g]iven the Supreme Court's disposition of both *Windsor* and *Perry*, the court finds that there is no longer any doubt that the issue currently before the court in this lawsuit presents a substantial question of federal law." *Id.* at 16.

Third, the court held that Utah's marriage bans violated same-sex couples' fundamental right to marry under the Due Process Clause of the Fourteenth Amendment. *Id.* at 23-29. The

2

court rejected Utah's argument that same-sex couples do not have a fundamental right to marry each other because they cannot accidentally procreate and explained that "however persuasive the ability to procreate might be in the context of a particular religious perspective, it is not a defining characteristic of conjugal relationships from a legal and constitutional point of view." *Id.* at 26. The court also rejected Utah's argument that recognizing the rights of same-sex couples to marry would transform marriage into a "consent based" institution, explaining that "[l]ike opposite-sex couples, same-sex couples may decide to marry partly or primarily for the benefits and support that marriage can provide to the children the couple is raising or plans to raise." *Id.* at 26-27. The court further concluded that same-sex couples were not seeking a "new" fundamental right, explaining that "[t]he alleged right to same-sex marriage that the State claims the Plaintiffs are seeking is simply the same right that is currently enjoyed by heterosexual individuals: the right to make a public commitment to form an exclusive relationship and create a family with a partner with whom the person shares an intimate and sustaining emotional bond." *Id.* at 28. The court additionally rejected Utah's argument that marriage for same-sex couples could not be a fundamental right because their right to marry has not been recognized until recently. "Here, it is not the Constitution that has changed, but the knowledge of what it means to be gay or lesbian. The court cannot ignore the fact that the Plaintiffs are able to develop a committed, intimate relationship with a person of the same sex but not with a person of the opposite sex. The court, and the State, must adapt to this changed understanding." *Id.* at 29.

Fourth, the court held that Utah's ban on same-sex couples marrying discriminates based on sex and that the "fact of equal application to both men and women does not immunize Utah's Amendment 3 from the heightened burden of justification that the Fourteenth Amendment requires of laws drawn according to sex." *Id*. at 35. Regardless of that conclusion, however, the

court stated that it did not need to analyze whether the marriage bans satisfy the more rigorous heightened scrutiny standard because the bans lack even a rational basis under the most deferential form of judicial review. The court held that the relevant question was not whether extending marriage to different sex couples is rational, but instead whether *excluding* same-sex couples is rationally related to a legitimate state interest because the challenged laws do "not grant marriage benefits to opposite-sex couples … [but] only … disallow same-sex couples from gaining access to these benefits" *Id.* at 42, 44.[1]

Fifth, the court held that there was no rational connection between the marriage bans and the asserted state interests in encouraging "responsible procreation" among different-sex couples" and in optimal parenting. The court concluded that it need not resolve whether different-sex couples provide a more optimal parenting environment than do same-sex couples, because "the State fails to demonstrate any rational link between its prohibition of same-sex marriage and its goal of having more children raised in the family structure the State wishes to promote" and "[t]here is no reason to believe that Amendment 3 has any effect on the choices of couples to have or raise children, whether they are opposite-sex couples or same-sex couples." *Id.* at 45. Moreover, the court noted that marriage bans detract from the goals of providing optimal environments for children by denying the protections of marriage for children currently being raised by same-sex couples: "These children are also worthy of the State's protection, yet [the marriage bans] harm[] them for the same reasons that the Supreme Court found that DOMA harmed the children of same-sex couples." *Id.*

---

[1] The court also explained that, under *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432 (1985), a purported interest in in proceeding with caution cannot provide a legitimate basis for laws based on irrational prejudice, negative attitudes, or unsubstantiated fears: "The State can plead an interest in proceeding with caution in almost any setting. If the court were to accept the State's argument here, it would turn the rational basis analysis into a toothless and perfunctory review." Ex. A. at 47.

The well-reasoned decision by the district court in *Kitchen* is directly applicable to the arguments presented by the parties to this case, which presents the same federal constitutional claims as were argued and decided in *Kitchen*.  Plaintiffs' motion for summary judgment – like the motion for summary judgment in *Kitchen* – should therefore be granted.

Dated:  December 23, 2013

Respectfully submitted,

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF VIRGINIA FOUNDATION, INC. | AMERICAN CIVIL LIBERTIES UNION FOUNDATION |
| /s/ Rebecca K. Glenberg (VSB No. 44099) 701 E. Franklin Street, Suite 1412 Richmond, Virginia 23219 Phone: (804) 644-8080 Fax: (804) 649-2733 rglenberg@acluva.org | James D. Esseks, *pro hac vice* Amanda C. Goad, *pro hac vice* Joshua A. Block, *pro hac vice* 125 Broad Street, 18th Floor New York, New York 10004 Phone: (212) 549-2500 Fax:  (212) 549-2650 jesseks@aclu.org agoad@aclu.org jblock@aclu.org |
| LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC. | JENNER & BLOCK LLP |
| Gregory R. Nevins, *pro hac vice* Tara L. Borelli, *pro hac vice* 730 Peachtree Street, NE, Suite 1070 Atlanta, Georgia 30308 Phone: (404) 897-1880 Fax: (404) 897-1884 gnevins@lambdalegal.org tborelli@lambdalegal.org | Paul M. Smith, *pro hac vice* Luke C. Platzer, *pro hac vice* Mark P. Gaber, *pro hac vice* 1099 New York Avenue, NW Suite 900 Washington, D.C. 20001-4412 Phone: (202) 639-6000 Fax: (202) 639-6066 psmith@jenner.com lplatzer@jenner.com mgaber@jenner.com |

*Counsel for Plaintiffs*