IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| JOANNE HARRIS, et al., ) | |
| on behalf of themselves and ) | |
| all others similarly situated, ) | |
| ) | Civil Action No.: 5:13cv077 |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | By: Hon. Michael F. Urbanski |
| ROBERT F. MCDONNELL, et al., ) | United States District Judge |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION

Plaintiffs Joanne Harris and Jessica Duff, an unmarried same-sex couple living in the Western District of Virginia, and Christy Berghoff and Victoria Kidd, a same-sex couple married under the laws of the District of Columbia and also living in the Western District of Virginia, brought this action against defendants Robert F. McDonnell, in his official capacity as the Governor of Virginia, Janet M. Rainey, in her official capacity as the State Registrar of Vital Records (collectively "the State Defendants"), and Thomas E. Roberts, in his official capacity as the Staunton Circuit Court Clerk ("Roberts"). Plaintiffs allege that the Commonwealth of Virginia's refusal to permit same-sex marriages within the Commonwealth violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution. Plaintiffs also challenge Virginia's refusal to recognize same-sex marriages performed under the laws of other states.

The State Defendants assert that the Governor is shielded from suit by the Eleventh Amendment to the United States Constitution and have filed a Motion to Dismiss on Sovereign

Immunity Grounds as to him. (Dkt. No. 24).[1] Roberts has filed a Motion to Dismiss the claims against him pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. No. 32). The issues have been extensively briefed, and the court heard argument on October 29, 2013. Having studied the issues, the court will grant the State Defendants' motion to dismiss the Virginia Governor on sovereign immunity grounds and deny Roberts' motion to dismiss.

## I.

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. While the Eleventh Amendment by its terms makes no mention of suits against a state by its own citizens, it is well established that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Edelman v. Jordan, 415 U.S. 651, 663 (1974) (citations omitted). State officers acting in their official capacity are also entitled to Eleventh Amendment protection, because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989) (citation omitted).

The Supreme Court recognized an exception to this rule in Ex parte Young, 209 U.S. 123 (1908), which allows suits against state officers for prospective equitable relief from ongoing violations of federal law. "In Ex parte Young, the Supreme Court began with the premise that states are incapable of authorizing unconstitutional conduct, and created the fiction that a state officer engaging in unconstitutional conduct is no longer acting as a state agent – and, thus, is no

---

[1] The State Defendants concede that Rainey, as the State Registrar of Vital Records, is a proper party defendant.

longer protected by the Eleventh Amendment." Lytle v. Griffith, 240 F.3d 404, 408-09 (4th Cir. 2001). The Ex parte Young exception is directed at "'officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings . . . to enforce against parties affected [by] an unconstitutional act.'" McBurney v. Cuccinelli, 616 F.3d 393, 399 (4th Cir. 2010) (quoting Ex parte Young, 209 U.S. at 155-56). The Ex parte Young Court reasoned:

> In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.

209 U.S. at 157.

The Fourth Circuit has read Ex parte Young to require "a 'special relation' between the state officer sued and the challenged statute to avoid the Eleventh Amendment's bar." Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 331 (4th Cir. 2001). "General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." Id. (quoting Children's Healthcare is a Legal Duty, Inc. v. Deters, 92 F.3d 1412, 1416 (6th Cir. 1996)). "'[S]pecial relation' under Ex parte Young has served as a measure of *proximity to* and *responsibility for* the challenged state action." S.C. Wildlife Fed'n v. Limehouse, 549 F.3d 324, 333 (4th Cir. 2008) (emphasis in original).

> This "special relation" requirement ensures that the appropriate party is before the federal court, so as not to interfere with the lawful discretion of state officials. Ex parte Young, 209 U.S. at 158-59. Primarily, the requirement has been a bar to injunctive actions where the relationship between the state official sought to be enjoined and the enforcement of the state statute is significantly attenuated.

3

Id. at 332-33. "The special-relation requirement protects a state's Eleventh Amendment immunity while, at the same time, ensuring that, in the event a plaintiff sues a state official in his individual capacity to enjoin unconstitutional action, '[any] federal injunction will be effective with respect to the underlying claim.'" McBurney, 616 F.3d at 399 (quoting Limehouse, 549 F.3d at 333).

Plaintiffs argue that the Governor bears a special relation to the provisions of the Virginia Constitution and Code challenged in this lawsuit,[2] warranting application of the Ex parte Young exception. The powers of the Governor are set forth in Article V of the Virginia Constitution and in the Virginia Code. The Governor is the chief executive officer of the Commonwealth. See Va. Const. art. V, § 1. He must "take care that the laws be faithfully executed." Va. Const. art. V, § 7. Further, plaintiffs rely upon the Governor's authority to formulate executive branch policies and his role as chief officer for personnel administration and planning and budget for the Commonwealth. See Va. Code § 2.2-103. Plaintiffs also cite the Governor's authority to appoint (and remove) certain officers of the Commonwealth, such as agency heads and members

---

[2] Plaintiffs challenge two elements of Virginia law: a statute and a provision of the Virginia Constitution. The text of these laws is as follows:

> Marriage between persons of same sex
> A marriage between persons of the same sex is prohibited. Any marriage entered into by persons of the same sex in another state or jurisdiction shall be void in all respects in Virginia and any contractual rights created by such marriage shall be void and unenforceable.

Va. Code Ann. § 20-45.2.

> Marriage
> That only a union between one man and one woman may be a marriage valid in or recognized by this Commonwealth and its political subdivisions.
>
> This Commonwealth and its political subdivisions shall not create or recognize a legal status for relationships of unmarried individuals that intends to approximate the design, qualities, significance, or effects of marriage. Nor shall this Commonwealth or its political subdivisions create or recognize another union, partnership, or other legal status to which is assigned the rights, benefits, obligations, qualities, or effects of marriage.

Va. Const. art. I, § 15-A.

of certain boards, commissions, etc. See id. § 2.2-106 (appointment of agency heads; severance); id. § 2.2-107 (appointment of members of commissions, boards, and other collegial bodies); id. § 2.2-108 (removal of members of certain boards, commissions, etc.).

While plaintiffs acknowledge that "[t]he mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute," Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 331 (4th Cir. 2001) (quoting Shell Oil Co. v. Noel, 608 F.2d 208, 211 (1st Cir. 1979)), they argue that their claims "are based not only on this general duty but also on [the Governor's] direct supervisory responsibility for all executive agencies, including the power to remove state officials who refuse to follow the Governor's policy or who fail to comply with constitutional requirements." Br. in Opp'n. re Mot. to Dismiss on Sovereign Immunity Grounds, Dkt. No. 28, at 7.

Plaintiffs' argument misapprehends the limited nature of the Ex parte Young special relation exception. Indeed, "[i]f the Governor is forced to remain a party to this suit, then the Governor also may be named in lawsuits challenging the validity of any state law." Lytle v. Griffith, 240 F.3d at 414 (Wilkinson, J., dissenting). "[P]ermitting a party to name the Governor in any suit challenging the validity of state law would allow the rule in Ex parte Young to swallow the protections offered by the Eleventh Amendment." Id.

In a series of decisions, the Fourth Circuit Court of Appeals has delineated the narrow confines of the Ex parte Young special relation exception. Application of that precedent to this case makes it clear that the exception does not apply here.

In Lytle v. Griffith, 240 F.3d 404 (4th Cir. 2001), police dispersed an anti-abortion protest on a pedestrian bridge crossing Interstate 64 in Norfolk, citing a no loitering provision of

5

the Virginia Code. The protestors challenged the statute on First and Fourteenth Amendment grounds, naming the Virginia Governor as a defendant. Much as here, plaintiffs contended that the Governor's general law enforcement responsibility and appointment authority provided him with a sufficient connection to the enforcement of the challenged statute to meet the Ex parte Young exception. Sovereign immunity was raised for the first time on appeal, and the Fourth Circuit remanded to allow the district court to consider the issue. On remand, the district court dismissed the Governor and allowed plaintiffs to substitute the Virginia Commissioner of Transportation as a defendant. See Lytle v. Doyle, 197 F. Supp. 2d 481, 484 n.1 (E.D. Va. 2001) (noting the dismissal and substitution).

Dissenting from the Fourth Circuit panel's decision to remand, Judge Wilkinson concluded that a remand was unnecessary as the Governor's immunity was clear. Judge Wilkinson wrote:

> The Governor of Virginia simply is not a proper party to this suit. There is no indication that the Governor actively enforced the challenged traffic statute or that he intends to do so in the future. Furthermore, the Governor's general duty to enforce the laws of Virginia does not satisfy Ex parte Young's requirement that the Governor bear a "special relation" to the statute under challenge. Any other result would routinely subject a Governor to suits challenging the validity of the most minor of state laws and regulations. I would dismiss the Governor as a defendant in this action.

Lytle v. Griffith, 240 F.3d at 411 (Wilkinson, J., dissenting). Judge Wilkinson's dissent first noted that the text of the challenged law made no mention of the Governor. The opinion then disagreed "that the Governor's general authority to enforce the laws of the Commonwealth is sufficient to satisfy Young's special relation requirement. . . . To hold otherwise would extend Young beyond what the Supreme Court has intended and held." Id. at 413 (citations omitted).

> Rather, it is only appropriate to allow a state official to be named in a suit based on his general duties where there is a "real, not ephemeral, likelihood or realistic potential that the connection will be employed against the plaintiff's interests." This requirement is consistent with Young, where the Minnesota Attorney General had already commenced proceedings to enforce the challenged statute.

Id. (quoting 1st Westco Corp. v. School Dist. of Philadelphia, 6 F.3d 108, 114 (3d Cir. 1993)) (other internal citations omitted). Judge Wilkinson recognized that the Governor bore no real connection to the enforcement of the loitering statute and had not ordered its enforcement against plaintiffs, or, for that matter, anyone else. Nor would removing the Governor as a defendant "have the effect of pushing the plaintiffs out of court," id. at 414, as the plaintiffs could seek relief by naming the Commonwealth's Transportation Commissioner.

Each of the points made by Judge Wilkinson is applicable here. Virginia's marriage laws do not expressly refer to the Governor, there is no allegation that the Governor has taken steps to enforce the same-sex marriage ban, and there is no dispute that the suit may continue against Rainey, the State Registrar of Vital Records. The State Defendants concede that Rainey is a proper defendant. Mots. Hr'g Tr., Oct. 29, 2013, Dkt. No. 87, at 8:12-13. By way of contrast to the lack of specific enforcement authority possessed by the Governor, the State Defendants recognize Rainey's statutory authority regarding Virginia marriage law and policy. See Reply to Resp. re Mot. to Dismiss on Sovereign Immunity Grounds, Dkt. No. 31, at 3 (citing Va. Code Ann. § 32.1-267(A), (E) (duty to file record of marriage and "furnish forms for the marriage license, marriage certificate, and application for marriage license used in the Commonwealth"); id. § 32.1-252 (outlining generally the duties of the State Registrar); id. § 32.1-268, -268.1,-271,-275 (regarding the reporting of data by the State Registrar on marriage, divorce, and annulments rates); id. § 32.1-272 (State Registrar's authority to issue certified and other copies of vital

records)). Plainly, Judge Wilkinson's analysis in <u>Lytle</u> calls for dismissal of the Governor from this case.

The same is true for the Fourth Circuit's opinion in <u>Waste Management Holdings, Inc. v. Gilmore</u>, 252 F.3d 316 (4th Cir. 2001). <u>Waste Management</u> involved a challenge to five Virginia statutes concerning the transportation and disposal of municipal solid waste under the dormant Commerce Clause and the Supremacy Clause. The Fourth Circuit concluded that the Virginia Governor should be dismissed because he lacked a special relation to the challenged laws, reasoning as follows:

> Here, although Governor Gilmore is under a general duty to enforce the laws of Virginia by virtue of his position as the top official of the state's executive branch, he lacks a specific duty to enforce the challenged statutes. Thus, we vacate the judgment against him and remand with instructions that the district court dismiss him as a defendant in this action. The fact that he has publicly endorsed and defended the challenged statutes does not alter our analysis. The purpose of allowing suit against state officials to enjoin their enforcement of an unconstitutional statute is not aided by enjoining the actions of a state official not directly involved in enforcing the subject statute.

<u>Id.</u> at 331.

In <u>South Carolina Wildlife Federation v. Limehouse</u>, 549 F.3d 324 (4th Cir. 2008), the Fourth Circuit found the <u>Ex parte Young</u> exception to be met, but that decision does not support its application here. The plaintiffs in <u>Limehouse</u> sued the Director of the South Carolina Department of Transportation seeking a declaratory judgment on the grounds that the Department's final environmental impact statement ("FEIS") regarding a planned connector bridge was improperly issued under federal law. <u>Id.</u> at 328. The Fourth Circuit noted that "the Director's connection to the Connector project need not be *qualitatively* special; rather, 'special relation' under <u>Ex parte Young</u> has served as a measure of *proximity to* and *responsibility for* the

8

challenged state action." Id. at 333 (emphasis in original). Plaintiffs argue that, like the Virginia Governor here, the South Carolina Transportation Director in Limehouse "was not directly involved" with the challenged state action. Mots. Hr'g Tr., Oct. 29, 2013, Dkt. No. 87, at 22:2-3. This argument ignores the fact that the Fourth Circuit in Limehouse found otherwise, concluding that because "[t]he Director and his agency [were] deeply involved in the preparation of the challenged FEIS and the procurement of permits to proceed with construction on the basis of the FEIS," he had a special relation with the challenged state action and was a proper party under Ex parte Young. 549 F.3d at 333. In contrast to the Director's "deep involvement" with the development of the challenged FEIS in Limehouse, plaintiffs have not pointed to any involvement on the part of the Virginia Governor with regard to Virginia's marriage laws beyond his general supervisory authority over the executive branch of the Commonwealth.

The requirement that a state officer have some involvement in the challenged state law, beyond mere supervisory or general authority, was again emphasized by the Fourth Circuit in McBurney v. Cuccinelli, 616 F.3d 393 (4th Cir. 2010). In McBurney, the court found that the Virginia Attorney General was not a proper party under Ex parte Young in a suit challenging a provision in the Virginia Freedom of Information Act (VFOIA) limiting relief to citizens of the Commonwealth. The court noted that the Attorney General had no specific statutory duty to enforce the VFOIA and that the Attorney General had "not issued any advisory opinions specifically directing state agencies to deny VFOIA requests by non-citizens, nor ha[d] he participated in the decisionmaking process of those agencies." Id. at 401. The McBurney court contrasted the "deep involvement" of the South Carolina Transportation Director in Limehouse and concluded that the Virginia Attorney General's authority was "significantly more attenuated." Id. (quoting Limehouse, 549 F.3d at 333). As such, the Fourth Circuit concluded

that the Attorney General's general authority to issue advisory opinions was insufficient to establish a special relation with the challenged law. Id.

Plaintiffs cite Citizens for Equal Protection v. Bruning, 455 F.3d 859 (8th Cir. 2006), for the proposition that "when a state takes the unusual step of imposing a broad, undifferentiated disadvantage that cuts across every component of state government, the Governor's responsibility for formulating and administering executive branch policy makes him the most appropriate defendant for purposes of an Ex parte Young injunction." Br. in Opp'n. re Mot. to Dismiss on Sovereign Immunity Grounds, Dkt. No. 28, at 6. To be sure, Bruning bears some similarity to this case as it involved a challenge to a provision of the Nebraska Constitution banning same-sex marriage. However, in Bruning, unlike here, the Governor of Nebraska chose "not to press the issue" of Eleventh Amendment immunity, and the Eighth Circuit made only a passing reference to the issue. Bruning, 455 F.3d at 864. In contrast to Bruning, the issue of sovereign immunity has been vigorously asserted here. Given the positions of the parties in this case and the Fourth Circuit precedent on this issue, the court does not consider the Bruning court's passing reference to the Ex parte Young exception to be particularly persuasive.[3]

---

[3] Plaintiffs cite two other cases for the proposition that the Ex parte Young exception may be satisfied by general supervisory authority, but neither of these call for a different result here. In Papasan v. Allain, 478 U.S. 265 (1986), the Supreme Court concluded that an equal protection challenge to Mississippi's distribution of school land funds was not barred by the Eleventh Amendment, noting that an injunction against the Mississippi Secretary of State could provide the relief requested, as the state statute at issue expressly vested in the Secretary of State general supervision over the administration of school lands by local officials. Id. at 282 n.14. Here, in contrast, the challenged Virginia laws make no mention of the Virginia Governor. Plaintiffs also cite Luckey v. Harris, 860 F.2d 1012 (11th Cir. 1988), in which the Eleventh Circuit held that the Georgia Governor was a proper party under Ex parte Young for a suit challenging the adequacy of the state's indigent defense funding. It is difficult to square the Eleventh Circuit's decision in Luckey with Fourth Circuit precedent, and it is questionable whether the Fourth Circuit would have reached the same result. Regardless, even in the Eleventh Circuit, Luckey has not been read to apply the Ex parte Young exception to a Governor where there is a less senior state official with more direct responsibility for the challenged action. See Women's Emergency Network v. Bush, 214 F. Supp. 2d 1316, 1317-18 (S.D. Fla. 2002) (dismissing the Governor of Florida as a defendant and finding the Executive Director of the Department of Highway Safety and Motor Vehicles the proper defendant for Ex parte Young purposes in a suit challenging the issuance of certain state license plates). Indeed, in affirming the judgment of the district court on appeal, the Eleventh Circuit in Women's Emergency Network held, consistent with the court's ruling herein, as follows:

10

Another federal court has recently rejected the expansive view of the Ex parte Young exception advocated by plaintiffs. In an opinion issued on November 26, 2013, Judge Feldman of the Eastern District of Louisiana concluded that the Louisiana Attorney General was improperly named as a defendant in a case involving claims similar to those at issue here. See Robicheaux v. Caldwell, 2:13cv05090 (E.D. La. filed July 16, 2013) (Dkt. No. 33). Judge Feldman held that "[t]he Attorney General's sweeping responsibility to enforce the laws of the State of Louisiana lacks the Ex parte Young specificity nexus between the Attorney General and the alleged unconstitutional provisions that is essential to defeat sovereign immunity." Id. at 5-6.

In sum, the court concludes that the Virginia Governor's general supervisory authority over the Commonwealth's executive branch does not constitute a special relation to the challenged same-sex marriage ban. The Virginia Governor has insufficient proximity to and responsibility for Virginia's marriage laws, and plaintiffs have not shown any involvement by the Governor in the enforcement of these laws. In contrast, Rainey, the State Registrar of Vital Records, has such proximity and responsibility and is a proper party defendant in this case. Accordingly, the court will grant the State Defendants' motion to dismiss Governor McDonnell on sovereign immunity grounds.

---

A governor's "general executive power" is not a basis for jurisdiction in most circumstances. If a governor's general executive power provided a sufficient connection to a state law to permit jurisdiction over him, any state statute could be challenged simply by naming the governor as a defendant. Where the enforcement of a statute is the responsibility of parties other than the governor (the cabinet in this case), the governor's general executive power is insufficient to confer jurisdiction.

323 F.3d 937, 949-950 (11th Cir. 2003) (internal citations omitted). As Virginia's marriage laws fall directly within Rainey's area of responsibility, she is the proper defendant in this case.

**II.**

Roberts, the Staunton Circuit Court Clerk, argues in his motion to dismiss that the court should dismiss the claims brought against him by Harris and Duff pursuant to Federal Rule of Civil Procedure 12(b)(1) and those brought against him by Berghoff and Kidd pursuant to Federal Rule of Civil Procedure 12(b)(6). Roberts' motion will be denied.

**A.**

Rule 12(b)(1) permits a defendant to move for dismissal based on a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Roberts argues that there is no subject matter jurisdiction here because Harris and Duff lack standing and because their claims are not ripe. Plaintiffs bear the burden of showing that they have standing and that their claims are ripe for review. Weigel v. Maryland, No. CIV. WDQ-12-2723, 2013 WL 3157517, at *6 (D. Md. June 19, 2013) (collecting cases). A party has standing when:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Doe v. Obama, 631 F.3d 157, 160 (4th Cir. 2011) (citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000)). A case is ripe for judicial decision "when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." Miller v. Brown, 462 F.3d 312, 319 (4th Cir. 2006) (citation omitted).

Roberts first argues that Harris and Duff's claim is not ripe because they did not tender a Virginia marriage application to him. As averred by Laura Moran, a deputy clerk, Harris and Duff came into the Staunton Clerk's office and asked something to the effect of "I think I already know the answer to this, but can same-sex couples get married?" Moran consulted Roberts, who

advised them that he had checked Virginia law and that same-sex couples could not get married in Virginia. Aff. of Laura Moran, Aug. 25, 2013, Dkt. No. 33-1, at 1-2.[4] Roberts asserts that because Harris and Duff did not take further steps towards acquiring a marriage license, they have not suffered a concrete and particularized injury and any future injury is speculative. Specifically, Roberts notes that Harris and Duff did not request a marriage license or an application for a license, submit an application for a license, ask about the tax for a marriage, tender the tax, state under oath they were (1) over the age 18, (2) legally competent, and (3) not related to each by a prohibited degree, and, finally, did not provide identification. Br. in Supp. re Motion to Dismiss, Dkt. No. 33, at 3-4. In sum, Roberts argues that plaintiffs have not yet suffered any "injury in fact."

It is abundantly clear that plaintiffs' alleged harm is actual, concrete, and particularized. Roberts claims that plaintiffs have skirted Virginia's administrative marriage application process, see Mots. Hr'g Tr., Oct. 29, 2013, Dkt. No. 87, at 40:8-9, but this contention ignores the fact that there is no administrative process by which plaintiffs – a same-sex couple – can obtain a Virginia marriage license. As counsel for Roberts conceded at oral argument, an otherwise valid application submitted by a same-sex couple would be denied by Roberts. Id. at 40:14-19. Plaintiffs need not submit a marriage application in order to challenge a law that flatly precludes their ability to obtain a marriage license. Having been informed by Roberts that same-sex couples may not marry in Virginia, Harris and Duff need not go through the motions of completing and tendering a license application to challenge the same-sex marriage ban. "The

---

[4] The court may consider the Moran affidavit at this stage. Int'l Acad. of Oral Med. & Toxicology v. N. Carolina State Bd. of Dental Examiners, 451 F. Supp. 2d 746, 749 (E.D.N.C. 2006) ("When a defendant raises standing or ripeness as the basis for a motion under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction, 'the district court may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" (quoting White Tail Park, Inc. v. Stroube, 413 F.3d 451, 459 (4th Cir. 2005))).

13

law does not require such a futile act." Townes v. Jarvis, 577 F.3d 543, 547 n.1 (4th Cir. 2009) (citations omitted).[5]

Roberts claims that "he has not been given the opportunity to consider all of the necessary facts and evidence to render a final decision" as to plaintiffs' marriage license application. Br. in Supp. re Motion to Dismiss, Dkt. No. 33, at 12; see also Mots. Hr'g Tr., Oct. 29, 2013, Dkt. No. 87, at 37:8-9 ("Roberts has been denied the opportunity to do his job[.]"). But this assertion ignores the salient fact that no matter what Harris and Duff put in their application, Virginia law precludes Roberts from issuing them a license. Indeed, even in the absence of an application by Harris and Duff, "[f]or all practical purposes . . . the decision has been made." Arch Mineral Corp. v. Babbitt, 104 F.3d 660, 666 (4th Cir. 1997). Their claims are therefore ripe and they have standing. See, e.g., Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 365-66 (1977) ("If an employer should announce his policy of discrimination by a sign reading 'Whites Only' on the hiring-office door, his victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs. . . . When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application."); LeClerc v. Webb, 419 F.3d 405, 413-14 (5th Cir. 2005) (finding nonimmigrant aliens challenging a law prohibiting them from sitting for the Louisiana Bar had

---

[5] The authorities cited by Roberts do not suggest otherwise. Unlike the plaintiffs in Doe v. Virginia Department of State Police, 713 F.3d 745, 758-59 (4th Cir. 2013) and El-Amin v. McDonnell, No. 3:12-CV-00538-JAG, 2013 WL 1193357, at *5 (E.D. Va. Mar. 22, 2013), who failed to take remedial steps to redress their claimed deprivations, there is no such step available to Harris and Duff that would result in the issuance of a marriage license to them. Nor does the Supreme Court's decision in Clapper v. Amnesty International USA, 133 S. Ct. 1138 (2013), support Roberts' argument. In Clapper, the Court found that plaintiffs lacked standing to challenge government surveillance activities based on the subjective and speculative fear of being targeted for such surveillance in the future. Id. at 1148-50. Here, in contrast, the claimed injury is not speculative or hypothetical as there are no circumstances under existing Virginia law which would allow Roberts to issue a marriage license to Harris and Duff.

standing and ripe claims when there was no reason to believe that the filing of a completed application would result in an outcome other than denial).

Roberts further contends that the injury alleged by the plaintiffs is not fairly traceable to his actions as the Virginia marriage laws stand as a "third party" between the plaintiffs and himself. Mots. Hr'g Tr., Oct. 29, 2013, Dkt. No. 87, at 42:4-7, 43:4-6. Roberts' argument ignores the fact that he has been sued in his official capacity. It cannot seriously be contended that the law is a third party to Roberts. He is a government official. The law is no stranger to him as he is, in fact, cloaked with its authority. As the Staunton Circuit Court Clerk, Roberts is tasked with issuing marriage licenses. A marriage license is precisely what plaintiffs seek. Because Roberts' official duties include issuing the very thing plaintiffs claim they have been unconstitutionally denied, their alleged injury is directly traceable to him. Roberts protests that he has no authority to amend Virginia law regarding same-sex marriage, nor the discretion to ignore it, id. at 34:2-9, yet he concedes that he has enforcement authority regarding the challenged law. Id. at 34:11-15. It is this enforcement authority that makes the injury traceable to him, regardless of any discretion he does or does not possess.

Finally, Roberts laments his "unhappy position" of being faced with criminal sanction from the Commonwealth if he were to issue a marriage license to a same-sex couple and being named as a defendant in a federal lawsuit if he does not. Id. at 44:6-12. Again, the suit is not lodged against Roberts personally. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985) (emphasis in original) (internal citation omitted). Being named in one's official capacity in a legal

proceeding such as this seeking declaratory and injunctive relief is simply a burden which government officials are occasionally required to bear in the course of holding public office.

**B.**

Roberts also seeks to dismiss the claims brought against him by Berghoff and Kidd for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs Berghoff and Kidd point out that they have not brought any claims against Roberts, noting that only Harris and Duff assert claims against him. Resp. in Opp'n re Mot. to Dismiss, Dkt. No. 42, at 10 (citing Compl. ¶¶ 89, 98, Dkt. No. 1, at 31, 33).[6] As Berghoff and Kidd have not sued Roberts, there is nothing to dismiss.

In sum, the court finds that the plaintiffs have established that the court has subject matter jurisdiction and will deny the Rule 12(b)(1) portion of Roberts' motion to dismiss. As it is clear that Berghoff and Kidd have raised no claims against Roberts, the court will likewise deny the Rule 12(b)(6) portion of the motion to dismiss as moot.

**III.**

In sum, the Virginia Governor lacks the requisite special relation to the enforcement of the challenged laws to be a proper defendant in this action. As such, a suit against him in his official capacity bears no distinction from a suit directly against the Commonwealth, a result barred by the Eleventh Amendment. In contrast, both Roberts and Rainey have responsibility for Virginia's marriage laws and are proper party defendants. Moreover, Harris and Duff have standing to assert a claim against Roberts, the Staunton Circuit Court Clerk, in his official capacity.

---

[6] The putative members of a proposed class of unmarried Virginia same-sex couples also state a claim against Roberts in the Complaint. Compl. ¶¶ 89, 98, Dkt. No. 1, at 31, 33. Plaintiffs' motion for class certification is currently pending. (Dkt. No. 26).

Accordingly, the court will enter an appropriate Order this day, granting the State Defendants' motion to dismiss the Governor on the basis of sovereign immunity and denying Roberts' motion to dismiss.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

Entered: December 23, 2013

*/s/ Michael F. Urbanski*

Michael F. Urbanski
United States District Judge