**In the United States District Court
For the Western District of Virginia
Harrisonburg Division**

| | |
|---|---|
| JOANNE HARRIS and JESSICA DUFF, and CHRISTY BERGHOFF and VICTORIA KIDD, on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>ROBERT F. MCDONNELL, in his official capacity as Governor of Virginia; JANET M. RAINEY, in her official capacity as State Registrar of Vital Records; THOMAS E. ROBERTS, in his official capacity as Staunton Circuit Court Clerk,<br><br>*Defendants*. | No. 5:13-cv-00077 |

**NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs respectfully submit the following notice of supplemental authority in support of their Motion for Summary Judgment filed on September 30, 2013 (ECF No. 44). Plaintiffs' brief in support of summary judgment was docketed on October 10, 2013 (ECF No. 62); Defendants' briefs in opposition were filed on October 24, 2013 (ECF No. 73, 74); and Plaintiffs' reply brief was filed on November 7, 2013 (ECF No. 86). Plaintiffs filed previous notices of supplemental authority on November 19, 2013 (ECF No. 89), December 20, 2013 (ECF No. 92), December 23, 2013 (ECF No. 93), and December 24, 3013 (ECF No. 96).

In *Bishop v. United States*, 4:04-cv-00848-TCK-TLW (N.D. Okla. Jan. 14, 2014) (attached as Ex. A), the U.S. District Court for the Northern District of Oklahoma granted in part plaintiffs' motion for summary judgment and held that Oklahoma's constitutional ban on

1

allowing same-sex couples to marry violates the Equal Protection Clause of the Fourteenth Amendment. The court held that Oklahoma's marriage ban failed even rational-basis review and entered a final judgment enjoining its enforcement. Ex. A at 67.[1]

The *Bishop* court's analysis provides further support for Plaintiffs' motion for summary judgment in this case.[2] First, the *Bishop* court rejected Oklahoma's argument that the Supreme Court's summary affirmance in *Baker v. Nelson*, 409 U.S. 810 (1972) (mem.), remains controlling precedent. Ex. A at 30-35. Like numerous other courts, the *Bishop* court explained that "there have been significant doctrinal developments in Supreme Court jurisprudence since 1972" – when *Baker* was decided – "indicating that these issues would now present a substantial question." *Id.* at 33. The court also noted that the Justices in *Windsor* anticipated that the *Windsor* decision would soon be applied to challenge bans on marriage for same-sex couples but never mentioned *Baker* as a possible impediment; the *Bishop* court observed that "[i]f *Baker* is binding, lower courts would have no reason to apply or distinguish *Windsor*, and all this judicial hand-wringing over how lower courts should apply *Windsor* would be superfluous." *Id.* at 34.

---

[1] The court stayed execution of the injunction pending the final disposition of any appeal with the U.S. Court of Appeals for the Tenth Circuit. *Id.*

[2] In addition to the *Bishop* court's equal-protection analysis, the court's dismissal of a challenge to Section 2 of the Defense of Marriage Act (DOMA) undermines Defendants' argument in this case that Plaintiffs must challenge Section 2 of DOMA in order to challenge Virginia's ban on recognizing the marriages of same-sex couples entered into in other jurisdictions. The court held that there was no causal connection between Section 2 of DOMA and the injury of non-recognition because "[t]he injury of non-recognition stems exclusively from state law . . . and not from [DOMA]," which "does not mandate that states take any particular action, does not remove any discretion from states, does not confer benefits upon non-recognizing states, and does not punish recognizing states." Ex. A at 15; *see also id.* (quoting Mary L. Bonauto, *DOMA Damages Same-Sex Families and Their Children,* 32 Fam. Adv. 10, 13 (Winter 2010), for the proposition that "[l]egal challenges to section 2 of DOMA have been few, and none have succeeded, at least in part because it is the state's nonrecognition law that presents the impediment to recognition, not section 2 itself").

Second, the *Bishop* court held that the Oklahoma marriage amendment's text, context, and legislative history all indicate that the statute was passed for the specific purpose of excluding same-sex couples from marrying. "This is simply not a case where exclusion of same-sex couples was a mere 'unintended consequence' of the law. Instead, this is a classic, class-based equal protection case in which a line was purposefully drawn between two groups of Oklahoma citizens – same-sex couples desiring an Oklahoma marriage license and opposite-sex couples desiring an Oklahoma marriage license." *Id.* at 46-47 (citations omitted).

Third, the *Bishop* court held that none of the justifications for Oklahoma's marriage ban could survive even rational-basis review under the Equal Protection Clause. The *Bishop* court noted at the outset of its rational-basis analysis that under *Lawrence v. Texas*, 539 U.S. 558 (2003), Oklahoma's marriage ban could not be justified based on moral disapproval of gay people or same-sex marriage:

> Preclusion of "moral disapproval" as a permissible basis for laws aimed at homosexual conduct or homosexuals represents a victory for same-sex marriage advocates, and it forces states to demonstrate that their laws rationally further goals other than promotion of one moral view of marriage. Therefore, although [Oklahoma's marriage ban] rationally promotes the State's interest in upholding one particular moral definition of marriage, this is not a permissible justification.

Ex. A at 55.

Next, the court held that Oklahoma's marriage ban is not rationally related to encouraging responsible procreation among heterosexual couples:

> Permitting same-sex couples to receive a marriage license does not harm, erode, or somehow water-down the "procreative" origins of the marriage institution, any more than marriages of couples who cannot "naturally procreate" or do not ever wish to "naturally procreate." Marriage is incentivized for naturally procreative couples to precisely the same extent regardless of whether same-sex couples (or other non-procreative couples) are included.

3

*Id.* at 58. The court also noted that "[t]he reality is that same-sex couples, while not able to 'naturally procreate,' can and do have children by other means" and "[i]f a same-sex couple is capable of having a child with or without a marriage relationship, and the articulated state goal is to reduce children born outside of a marital relationship, the challenged exclusion hinders rather than promotes that goal." *Id.* at 59. The court concluded that, under Oklahoma's defense of the marriage ban "[s]ame-sex couples are being subjected to a 'naturally procreative' requirement to which no other Oklahoma citizens are subjected, including the infertile, the elderly, and those who simply do not wish to ever procreate. Rationality review has a limit, and this well exceeds it." *Id.* at 61.[3]

The *Bishop* court next rejected the "optimal parenting" justification for similar reasons. The court explained that, even if it assumed that being raised by married biological parents is an "optimal" environment for parenting, "the Court cannot discern, a single way that excluding same-sex couples from marriage will 'promote' this 'ideal' child-rearing environment." *Id.* at 62. The court concluded that "[a]s with 'natural procreative' abilities, [Oklahoma] does not condition any other couple's receipt of a marriage license on their willingness or ability to provide an 'optimal' child-rearing environment for any potential or existing children." *Id.* at 63.

The *Bishop* court then rejected the final asserted state interest of protecting the institution of marriage from the "negative impact" posed by allowing same-sex couples to marry:

> The "negative impact" argument is impermissibly tied to moral disapproval of same-sex couples as a class of Oklahoma citizens. . . . Exclusion of just one class of citizens from receiving a marriage license based upon the perceived "threat"

---

[3] As part of rejecting the purported rationale of encouraging responsible procreation, the *Bishop* court also noted that the "[t]raditional exclusion of the disadvantaged group from state-sanctioned marriage does not itself evidence a rational link to the identified goal of promoting responsible procreation within marriage." *Id.* at 57. "[T[he mere fact that an exclusion has occurred in the past (without constitutional problem) does not mean that such exclusion is constitutional when challenged at a particular moment in history." *Id.* at 58.

4

> they pose to the marital institution is, at bottom, an arbitrary exclusion based upon the majority's disapproval of the defined class. It is also insulting to same-sex couples, who are human beings capable of forming loving, committed, enduring relationships. "'Preserving the traditional institution of marriage,'" which is the gist of Smith's final asserted justification, "is just a kinder way of describing the State's moral disapproval of same-sex couples." *Lawrence*, 539 U.S. at 602 (Scalia, J., dissenting).

Ex. A at 65.

The *Bishop* decision is the latest in a succession of cases recognizing that laws like Virginia's marriage bans fail even the most deferential standard of review. It is also the latest decision to consider and reject the same arguments that Defendants' rely upon to defend Virginia's marriage bans in this case. Plaintiffs' motion for summary judgment – like the motion for summary judgment in *Bishop* – should therefore be granted.

Dated: January 15, 2014

Respectfully submitted,

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF VIRGINIA FOUNDATION, INC. | AMERICAN CIVIL LIBERTIES UNION FOUNDATION |
| _____/s/_____ | James D. Esseks, *pro hac vice* |
| Rebecca K. Glenberg (VSB No. 44099) | Amanda C. Goad, *pro hac vice* |
| 701 E. Franklin Street, Suite 1412 | Joshua A. Block, *pro hac vice* |
| Richmond, Virginia 23219 | 125 Broad Street, 18th Floor |
| Phone: (804) 644-8080 | New York, New York 10004 |
| Fax: (804) 649-2733 | Phone: (212) 549-2500 |
| rglenberg@acluva.org | Fax: (212) 549-2650 |
| | jesseks@aclu.org |
| | agoad@aclu.org |
| | jblock@aclu.org |
| LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC. | JENNER & BLOCK LLP |
| | Paul M. Smith, *pro hac vice* |
| Gregory R. Nevins, *pro hac vice* | Luke C. Platzer, *pro hac vice* |
| Tara L. Borelli, *pro hac vice* | Mark P. Gaber, *pro hac vice* |
| 730 Peachtree Street, NE, Suite 1070 | 1099 New York Avenue, NW Suite 900 |
| Atlanta, Georgia 30308 | Washington, D.C. 20001-4412 |
| Phone: (404) 897-1880 | Phone: (202) 639-6000 |

Fax: (404) 897-1884  
gnevins@lambdalegal.org  
tborelli@lambdalegal.org  

Fax: (202) 639-6066  
psmith@jenner.com  
lplatzer@jenner.com  
mgaber@jenner.com  

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 15th day of January, 2014, I effected service upon counsel for Defendants by electronically filing the foregoing with the Clerk of the Court using the CM/ECF system.

Rita W. Beale
Deputy Attorney General
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
rbeale@oag.state.va.us

Allyson K. Tysinger
Senior Assistant Attorney General/Chief
atysinger@oag.state.va.us

Catherine Crooks Hill
Senior Assistant Attorney General
cchill@oag.state.va.us

Michael H. Brady
Assistant Solicitor General
mbrady@oag.state.va.us


*Counsel for Defendants Robert F. McDonnell and Janet M. Rainey*

Rosalie Pemberton Fessier
Timberlake, Smith, Thomas & Moses, P.C.
25 North Central Avenue
P.O. Box 108
Staunton, VA 24402-0108
(540) 885-1517
rfessier@tstm.com

*Counsel for Defendant Thomas E. Roberts*

January 15, 2014             /s/
                   Rebecca K. Glenberg (VSB No. 44099)
                   701 E. Franklin Street, Suite 1412
                   Richmond, Virginia 23219
                   Phone: (804) 644-8080
                   Fax: (804) 649-2733
                   rglenberg@acluva.org