IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| JOANNE HARRIS, et al., | ) | |
| *on behalf of themselves and* | ) | |
| *all others similarly situated,* | ) | |
| | ) | Civil Action No.: 5:13cv077 |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | |
| | ) | By: Hon. Michael F. Urbanski |
| JANET M. RAINEY, et al., | ) | United States District Judge |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiffs Joanne Harris, Jessica Duff, Christy Berghoff, and Victoria Kidd brought this suit challenging Virginia's refusal to allow same-sex marriages and its refusal to recognize same-sex marriages performed by sister states. Defendants are Janet M. Rainey, in her official capacity as the State Registrar of Vital Records, and Thomas E. Roberts, in his official capacity as the Staunton Circuit Court Clerk.[1] This matter is currently before the court on the plaintiffs' Motion to Certify Class, (Dkt. No. 26), and Motion to Amend Class Definition. (Dkt. No. 79). The court heard argument on the class certification motion on October 29, 2013, and the issue has been extensively briefed by the parties. The question of certification is thus ripe for adjudication.

---

[1] Robert F. McDonnell was originally named as a defendant in his official capacity as the Governor of Virginia; he has been dismissed from the case. (Dkt. No. 95). Roberts has not filed any opposition to the Motion to Amend Class Definition, but it is clear that he opposes class certification. He has "adopt[ed] and incorporate[d]" Rainey's arguments in his pleadings in opposition to the Motion to Certify Class in addition to advancing additional arguments against class certification. See Resp. in Opp'n re Mot. to Certify Class, Dkt. No. 36, at 1-2.

Plaintiffs seek to certify this case as a class action pursuant to Federal Rule of Civil Procedure 23. Plaintiffs originally proposed two subclasses, one representing unmarried same-sex couples who wish to wed in Virginia and one representing same-sex couples legally wed out of state who wish to have their marriages recognized by Virginia. See Br. in Supp. re Mot. to Certify Class, Dkt. No. 27, at 4. Plaintiffs have now moved to amend the proposed class definition to the following:

> (1) all same-sex couples in Virginia who have not married in another jurisdiction.

> (2) all same-sex couples in Virginia who have married in another jurisdiction.

Mot. to Amend Class Definition, Dkt. No. 79, at 1. The court must therefore consider: (1) whether class certification is appropriate under the facts of the case, and (2) whether leave to amend the proposed class definition is warranted. Because the amended proposed class definition meets the requirements of Rule 23(a) and Rule 23(b)(2), the court will grant the plaintiffs' motions and certify the class. The court will exclude from the class any person who is a plaintiff in the pending case of Bostic v. McDonnell, 2:13cv00395 (E.D. Va. filed Sept. 18, 2013).

The court is required to conduct a "rigorous analysis" to ensure that a proposed class action complies with the requirements set forth in Rule 23. Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 318 (4th Cir. 2006) (citations omitted).[2] "To be certified, a proposed class must satisfy Rule 23(a) and one of the three sub-parts of Rule 23(b)." Id.

---

[2] It should be noted at the outset that the merits of plaintiffs' claims are not a relevant consideration at the certification stage. Thorn, 445 F.3d at 319 ("The likelihood of the plaintiffs' success on the merits . . . is not relevant to the issue of whether certification is proper.").

## I.    Rule 23(a).

All class actions must, as an initial matter, satisfy the four requirements of Rule 23(a): (1) numerosity of parties, (2) commonality of factual or legal issues, (3) typicality of claims and defenses of class representatives, and (4) adequacy of representation. Thorn, 445 F.3d at 318 (citations omitted); Fed. R. Civ. P. 23(a). The court must examine each of these factors to ensure compliance with Rule 23(a).

### A. *Numerosity.*

For a class to meet the first requirement of Rule 23(a), it must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No bright line test exists for determining numerosity and the determination rests on the court's practical judgment in light of the particular facts of the case." Savani v. Wash. Safety Mgmt. Solutions, LLC, No. 1:06-CV-02805-MBS, 2012 WL 3757239, at *2 (D.S.C. Aug. 28, 2012) (citing Lott v. Westinghouse Savannah River Co., Inc., 200 F.R.D. 539, 550 (D.S.C. 2000)). Additionally, it is not required that the exact size of a class be established. Indeed, "where general knowledge and common sense would indicate that it is large, the numerosity requirement is satisfied." Mitchell-Tracey v. United Gen. Title Ins. Co., 237 F.R.D. 551, 556 (D. Md. 2006) (citing 6 Alba Conte & Herbert Newberg, Newberg on Class Actions, § 3:3 (4th ed. 2006)); see also Haywood v. Barnes, 109 F.R.D. 568, 576-77 (E.D.N.C. 1986) (detailing the level of precision required for numerosity to be established). "Plaintiff[s] need only make a reasonable estimate of the number of class members." Wiseman v. First Citizens Bank & Trust Co., 212 F.R.D. 482, 486 (W.D.N.C. 2003); see also Fitzgerald v. Schweiker, 538 F. Supp. 992, 1000 (D. Md. 1982) ("Plaintiffs' good faith estimate of the size of the class clearly is sufficient to establish numerosity.").

Plaintiffs here ground their good faith estimate on the 2010 United States Census, which reported over 15,000 same-sex households in the Commonwealth. Br. in Supp. re Mot. to Certify Class, Dkt. No. 27, at 5. While defendants question the reliability of the census data cited by plaintiffs, there can be little doubt that the numerosity requirement is satisfied. Defendants' argument is akin to the one rejected by the court in Thomas v. Louisiana-Pacific Corp., 246 F.R.D. 505 (D.S.C. 2007). "Although Defendants contest numerosity, Defendants in substance simply argue Plaintiffs' estimate is incorrect. Even assuming the accuracy of Defendants' estimates, the numerosity requirement is satisfied[.]" Id. at 509. The same is true in this case. Even if the census data is off by an order of magnitude, the numerosity requirement is plainly met. See, e.g., Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 425 (4th Cir. 2003) (noting with approval the district court's observation that "1400 employees plus their families" "easily" satisfied Rule 23(a)(1)'s numerosity requirement). Recent experience in Utah makes this point clear. In an article posted on January 8, 2014, CNN reported that "[o]fficials say more than a thousand marriage licenses between gay and lesbian couples were issued in the 17 days between the initial ruling and the high court's Monday order blocking enforcement." Bill Mears, Utah Will Not Recognize Same-Sex Marriages Performed Before High Court Stay, CNN Political Ticker (Jan. 8, 2014, 1:17 PM), http://politica/ticker.blogs.cnn.com/2014/01/08/utah-will-not-recognize-same-sex-marriages-performed-before-high-court-stay/. The 2010 census data, coupled with the actual experience in Utah, amply supports the conclusion that the number of same-sex couples in Virginia seeking to be married under the laws of the Commonwealth far exceeds any number which would be practical for joinder. Plaintiffs' good faith estimate meets the numerosity requirement.

B. *Commonality.*

Commonality requires the presence of questions of law or fact common to the class, Fed. R. Civ. P. 23(a)(2), such that "classwide resolution" can be provided "in one stroke." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011). It is clear that here, whatever factual nuances may exist among putative class members, the legal relief sought is the same: a declaratory judgment striking down Virginia's laws banning same-sex marriage and a permanent injunction barring their enforcement. No other relief is sought. Such relief rests on identical questions of law and would clearly resolve the claims "classwide" and in "one stroke." The arguments raised by defendants against commonality are really arguments about the ascertainability of the proposed class. See Br. in Opp'n re Mot. to Certify Class, Dkt. No. 30, at 4 (arguing that commonality does not exists because the proposed class is "defined in individualized, subjective terms"). Moreover, this argument is sidestepped by the amended class definition. As such, the court finds that the commonality requirement is met.

C. *Typicality.*

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The essence of the typicality requirement is captured by the notion that 'as goes the claim of the named plaintiff, so go the claims of the class.'" Deiter v. Microsoft Corp., 436 F.3d 461, 466 (4th Cir. 2006) (citing Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 340 (4th Cir. 1998)). Thus, in pursuing their own case, the representative parties "must simultaneously tend to advance the interests of the absent class members." Id. The typicality requirement tends to merge with that of commonality. Id. (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 626, n.20 (1997) and Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 n.13 (1982)). Here, the plaintiffs meet the

typicality requirement for the same reason that they meet the commonality requirement – the relief sought would benefit all class members in an identical manner.

D. *Adequacy of Representation.*

Finally, adequacy of representation requires that "the representative parties will fairly and adequately protect the interests of the class." Fed R. Civ. P. 23(a)(4). "The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent." Monroe v. City of Charlottesville, No. CIV. 3:05CV00074, 2007 WL 2461746, at *2 (W.D. Va. Aug. 27, 2007) (quoting Amchem Prods., 521 U.S. at 625), aff'd sub nom., Monroe v. City of Charlottesville, Va., 579 F.3d 380 (4th Cir. 2009). This inquiry also tends to merge with the preceding inquiries into commonality and typicality. Id. (citing Amchem Prods., 521 U.S. at 626 n.20). A conflict must be fundamental to defeat adequacy of representation; a conflict is not fundamental when all class members "share common objectives and the same factual and legal positions and have the same interest in establishing the liability of defendants." Ward v. Dixie Nat. Life Ins. Co., 595 F.3d 164, 180 (4th Cir. 2010) (internal alterations omitted) (quoting Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 431 (4th Cir. 2003)); see also Amchem Prods., 521 U.S. at 625 (quoting E. Tex. Motor Freight Sys. Inc. v. Rodriguez, 431 U.S. 395, 403 (1977)) ("A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." (internal alterations omitted)). Finally, in addition to inquiring into the named plaintiffs themselves, the adequacy requirement also contemplates the conflicts and competency of class counsel. Amchem Prods., 521 U.S. at 626 n.20 (citing Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 n.13 (1982)).

As with commonality and typicality, the total overlap of the relief sought by all plaintiffs demonstrates that the adequacy of representation requirement is met. If either of the named

plaintiff couples succeed on the merits of their respective claims, the same injunction would afford identical relief to all members of the respective subclass. Defendants, however, argue that there is a conflict in "litigation theory." Four individual plaintiffs have filed a parallel suit in the Eastern District of Virginia challenging the same Virginia marriage laws: Bostic v. McDonnell, 2:13cv00395 (E.D. Va. filed Sept. 18, 2013). Defendants assert that the "effort[s] of counsel in this case to draft [the Bostic Plaintiffs] into a non-opt out class creates a conflict." Br. in Opp'n re Mot. to Certify Class, Dkt. No. 30, at 5. The crux of defendants' argument appears to be that the proposed class would interfere with the Bostic Plaintiffs' ability to pursue their lawsuit and chosen litigation strategy. Any potential conflict raised by defendants, however, is resolved by simply honoring the Bostic Plaintiffs' request to amend the class definition to exclude them. See Notice of Req. that Proposed Class Definition be Amended to Exclude Four Indvs., Dkt. No. 38, at 3 (so requesting). Furthermore, plaintiffs do not object to the Bostic Plaintiffs' request. The court will therefore exclude the Bostic Plaintiffs from the class definition. Any potential conflict having been resolved, the named plaintiffs fulfill the requirements to serve as adequate representative parties.

As to class counsel, the exclusion of the Bostic Plaintiffs likewise moots the conflict concerns raised by defendants. As to the competency of counsel, the plaintiffs note that their counsel has had significant experience in the field of civil rights class action lawsuits, particularly those brought on behalf of same-sex couples and gay and lesbian individuals. Br. in Supp. re Mot. to Certify Class, Dkt. Nos. 27, at 11. Defendants do not dispute these qualifications. As such, the court finds that plaintiffs' counsel meet the requirements of Rule 23(a)(4).[3]

---

[3] For the same reasons, upon consideration of the factors set forth in Rule 23(g), the court further finds that plaintiffs' counsel will fairly and adequately represent the interests of the class.

In light of the foregoing reasons, the court finds that each of the four Rule 23(a) requirements is satisfied.

## II.     Rule 23(b)(2).

In addition to meeting the requirements of Rule 23(a), a class must also qualify under one of the three "types" of classes set forth in Rule 23(b). Gray v. Hearst Commc'ns., Inc., 444 F. App'x 698, 700 (4th Cir. 2011) ("[A] proposed class must meet the requirements of both Rule 23(a) and Rule 23(b)."). Plaintiffs seek to pursue their claims as a Rule 23(b)(2) class. Class certification pursuant to Rule 23(b)(2) is appropriate when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Notwithstanding defendants' objections to the contrary, plaintiffs meet this standard.

Defendants argue that class certification is precluded by the so-called necessity doctrine. Defendants note that "'the vast majority of courts' apply a 'need requirement' to deny class certification for suits seeking declaratory or injunctive relief under Rule 23(b)(2) where 'a class action is not necessary inasmuch as all the class members will benefit from any injunction issued on behalf of a single plaintiff.'" 7AA Charles Alan Wright et al., Federal Practice And Procedure § 1785.2 (3d ed. updated Apr. 2013) (citations omitted) (hereinafter "Wright & Miller"). Defendants further note that some courts have stated that "class certification is particularly unnecessary where, as here, 'the suit is attacking a statute or regulation as being facially unconstitutional.'" Mills v. District of Columbia, 266 F.R.D. 20, 22 (D.D.C. 2010) (citing Alliance to End Repression v. Rochford, 565 F.2d 975, 980 (7th Cir. 1977)).

The necessity doctrine for class actions is highly unsettled. An "oft-quoted" observation is that "like Newton's law of thermodynamics, for every class denial on the basis of lack of need, one is able to find a decision, or several decisions, often in the same circuit, where other courts have certified Rule 23(b)(2) classes under virtually the same circumstances." 2 William B. Rubenstein, Newberg on Class Actions, § 4:35 (5th ed. 2013). The necessity doctrine was developed by courts shortly after Rule 23 was enacted in 1966, and many of the authorities applying the doctrine date from the 1970s. Id. Indeed, all but two of the authorities cited by defendants hail from that decade.

Over the last forty years, however, the necessity doctrine has been employed with less frequency. Indeed, many courts "have rejected the necessity doctrine outright as being non-textual, noting that a need requirement finds no support in Rule 23 and, if applied, would entirely negate any proper class certifications under Rule 23(b), a result hardly intended by the Rules Advisory Committee." Id. (collecting cases); cf. Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 398 (2010) ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action.").

The authorities cited by defendants do not dictate a different result. Defendants are correct that the Fourth Circuit stated in Sandford v. R. L. Coleman Realty Co., Inc., 573 F.2d 173 (4th Cir. 1978), that "[s]ince the plaintiffs could receive the same injunctive relief in their individual action as they sought by the filing of their proposed class action, class certification was unnecessary in order to give the plaintiffs the injunctive relief they requested through class certification . . . ." Id. at 178. But the procedural posture of that case is important. The court of appeals was considering a challenge to both the district court's denial of injunctive relief and its denial of class certification, which the district court had denied as "too late" when it was sought

in an amended complaint. Id. at 174. The Fourth Circuit found that "under the circumstances of th[e] case, the claims with reference to class certification and denial of injunctive relief [could] be considered and disposed of together." Id. at 178. The court first granted the injunctive relief sought and then observed that "[w]ith the entry of such relief, any need for class certification disappears." Id. at 179. Thus, the court did not hold that necessity was required for class certification, but merely noted that there was no need for a class where the injunctive relief had already been entered.

The court in Sandford cited Gray v. International Brotherhood of Electrical Workers, 73 F.R.D. 638 (D.D.C. 1977), and quoted the following passage in a footnote:

> Insofar as this aspect of the plaintiffs' suit is concerned, then, there exists no need for this case to be certified as a class action. This Court has consistently and emphatically adhered to the view that when, as here, 'the relief being sought can be fashioned in such a way that it will have the same purpose and effect as a class action,' the certification of a class action is unnecessary and inappropriate . . . .

Sandford, 573 F.2d at 179 n.9 (quoting Gray, 73 F.R.D. at 640). The Gray decision, however, has met with disfavor in subsequent holdings by the United States District Court for the District of Columbia. See Littlewolf v. Hodel, 681 F. Supp. 929, 937 (D.D.C. 1988) (finding Gray to be "far from dispositive" and finding that "the idea that a class may be certified only if 'necessary' flies in the face of the Federal Rules"), aff'd sub nom., Littlewolf v. Lujan, 877 F.2d 1058 (D.C. Cir. 1989); see also Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth., 239 F.R.D. 9, 23 (D.D.C. 2006) (likewise rejecting the necessity inquiry in class certification). Indeed, in a case cited by defendants, the court acknowledged that "establishing need is not a mandatory prerequisite," but instead a factor "not uncommon[ly]" used by courts "in exercising their discretion, to deny class certification on that basis when the particular facts

and circumstances of the case warrant doing so." Mills v. District of Columbia, 266 F.R.D. 20, 22 (D.D.C. 2010).

Similarly, the other Fourth Circuit case cited by defendants is one in which a district court (sitting as three judge panel) exercised its discretion in declining to certify a class. See Doe v. Commonwealth's Attorney for City of Richmond, 403 F. Supp. 1199, 1200 n.1 (E.D. Va. 1975) (finding that the "prosecution of separate actions by or against individual members of the alleged classes would not create a risk of inconsistent or varying adjudications" and "therefore[ ] the benefits which would justify proceeding as a class action will be realized without resort to th[at] procedure"). Indeed, all but one of the remaining authorities cited by defendants are either district courts exercising such discretion or appellate courts upholding the exercise of that discretion. See Galvan v. Levine, 490 F.2d 1255, 1262 (2d Cir. 1973) (holding that since class action designation was unnecessary to award injunctive relief, refusal of certification by the district court was permissible); Thomas v. Weinberger, 384 F. Supp. 540, 543 (S.D.N.Y. 1974) (district court declining to certify class where class action status was unnecessary) (citing, inter alia, Galvan); cf. Wright & Miller § 1785.2 (noting that the vast majority of courts accept necessity as an appropriate consideration in the exercise of discretion to certify a class action). But cf. Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 400 (2010) ("The discretion suggested by Rule 23's 'may' is discretion residing in the plaintiff[.]").[4] It is therefore not accurate to characterize these authorities as holding that a lack of necessity

_____

[4] The sole remaining authority cited by defendants, the Seventh's Circuit decision in Alliance to End Repression v. Rochford, 565 F.2d 975 (7th Cir. 1977), does not suggest that the Seventh Circuit has imposed a need requirement, as is evident from subsequent decisions. See, e.g., Brown v. Scott, 602 F.2d 791, 795 (7th Cir. 1979) ("In a number of cases this court has held that if the requirements of Rule 23 are satisfied class certification should not be refused because of lack of need."); Gammon v. GC Services Ltd. Partnership, 162 F.R.D. 313, 320 (N.D. Ill. 1995) ("It is well-settled in the Seventh Circuit, however, that a motion for class certification will not be denied merely because certification is not necessary."); Borowski v. City of Burbank, 101 F.R.D. 59, 62 (N.D. Ill. 1984) ("Rochford does not represent the law of this Circuit and has not been followed for the proposition[] [that class certification should be denied when there is no need for class action].").

disallows class certification; instead, they reflect that a denial of certification under such circumstances is not an abuse of discretion.

Finally, even those courts which do adhere to the necessity doctrine accept that possible mootness provides sufficient reason to certify a class. See 2 William B. Rubenstein, Newberg on Class Actions, § 4:35 (5th ed. 2013) (citing Casale v. Kelly, 257 F.R.D. 396, 406-07 (S.D.N.Y. 2009)). Plaintiffs have raised mootness as a possible issue should any of the named plaintiffs have a change in personal circumstances. Indeed, a romantic break-up, a death, or an out-of-state move could moot the claims of either of the named same-sex couples; certifying the class would avoid the resultant waste of judicial resources if the claims of a named plaintiff were to become moot. In Arizona Officials for English v. Arizona, 520 U.S. 43 (1997), the Supreme Court noted that mootness concerns could have been avoided had the plaintiff in that case sought class certification instead of merely proceeding as an individual. Id. at 72 n.27. Thus, even application of the necessity doctrine would not foreclose class certification in this case due to mootness concerns.

Most convincing, however, are the affirmative statements by the Supreme Court and the Fourth Circuit that suits brought for injunctive relief alleging civil rights violations are precisely the type of suit for which Rule 23(b)(2) was intended to provide class certification. See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997) (citations omitted) ("Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples [of when class certification is proper under Rule 23(b)(2)]."); Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 330 (4th Cir. 2006) ("The twin requirements of Rule 23(b)(2) – that the defendant acted on grounds applicable to the class and that the plaintiff seeks predominantly injunctive or declaratory relief – make that Rule particularly suited for class actions alleging racial

12

discrimination and seeking a court order putting an end to that discrimination."); id. at 330 n.24

("Indeed, Rule 23(b)(2) was created to facilitate civil rights class actions" (citations omitted));

see also Wright & Miller § 1775 ("[S]ubdivision (b)(2) was added to Rule 23 in 1966 primarily

to facilitate the bringing of class actions in the civil-rights area."); id. § 1776.1 (noting that "Rule

23(b)(2) has been utilized to protect a variety of constitutional rights" including "actions

challenging various statutes on equal-protection grounds"). Without addressing the merits of

plaintiffs' claims, it is clear that they allege just such a class-wide violation of civil rights. Thus,

the amended proposed class falls within the scope of classes contemplated by Rule 23(b)(2).

Roberts puts forward one additional argument against class certification – that it should

be denied because the plaintiffs have failed to demonstrate that he, Roberts, acted or refused to

act on grounds that apply generally to the entire class. Roberts notes that his actions (or

inactions) as to various components of the class vary:

> Roberts neither acted or refused to act on grounds affecting same-sex couples who theoretically and subjectively might want to get married AND otherwise qualify for a marriage license AND wish to apply for a marriage license in the City of Staunton as opposed to their own locality, as there has been no act or omission by Roberts or injury sustained by such an unascertainable class. Finally, Roberts neither acted or refused to act on grounds affecting individuals who were validly married in other jurisdictions and desire recognition in Virginia as he has no authority or control over Virginia's "recognition" of same sex marriages nor has he had or will he have in the future any official involvement on this issue with individuals who are already married.

Resp. in Opp'n to Mot. to Certify Class, Dkt. No. 36, at 2.

Roberts' argument misses the point. Certification is appropriate pursuant to Rule

23(b)(2) when the defendant "acted or refused to act on grounds that apply generally to the entire

class." Fed R. Civ. P. 23(b)(2). The "generally applicable" language signifies "that the party

opposing the class does not have to act directly against each member of the class." Wright &

Miller § 1775. Instead, "[t]he key is whether the party's actions would affect all persons

similarly situated so that those acts apply generally to the whole class." Id.; see also Fed. R. Civ.

P. 23, Advisory Committee Note to 1966 Amendment of Subdivision (b)(2) ("Action or inaction

is directed to a class within the meaning of [Rule 23(b)(2)] even if it has taken effect or is

threatened only as to one or a few members of the class, provided it is based on grounds which

have general application to the class."). As such, the relevant inquiry is whether the grounds for

Roberts' action or inaction are applicable to the putative class as a whole. The challenged

provisions of Virginia law direct Roberts to withhold a marriage license to all members of the

first subsection of the amended proposed class on the same grounds: status as a same-sex

couple.[5] Any of the putative subclass members would receive the same treatment from Roberts

(the denial of their marriage application) for the same reason (being a same-sex couple). As

such, Rule 23(b)(2) is plainly satisfied.

**III.    Class Definition.**

Defendants objected to the plaintiffs' initial proposed class definition. Although the

plaintiffs maintain that their original proposed definition was valid, they have moved to amend

the proposed class. Plaintiffs' amended proposed class definition is as follows:

> (1) all same-sex couples in Virginia who have not married in another jurisdiction.

> (2) all same-sex couples in Virginia who have married in another jurisdiction.

Mot. to Amend Class Definition, Dkt. No. 79, at 1. Plaintiffs' motion to amend the class

definition is functionally a motion to amend Section V of their Complaint. See Compl. ¶ 74,

Dkt. No. 1, at 27 (stating the original proposed class definition). A party may move for leave to

---

[5] Only the first of the two proposed subclasses asserts claims against Roberts – same-sex couples who are not
married.

14

amend its pleadings and the court "should freely give leave [to do so] when justice so requires." Fed. R. Civ. P. 15(a)(2). Indeed, "[l]eave to amend a pleading should be denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 409 (4th Cir. 2013) (emphasis original) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999)).

Rainey[6] acknowledges this liberal standard, see Resp. in Opp'n re Mot. to Amend Class Definition, Dkt. No. 83, at 1, but insists that the amendment should be denied as futile because the amended proposed class definition is not ascertainable and not cohesive. Rainey's futility argument fails because the amended proposed class is both ascertainable and cohesive.

A. *The amended proposed class definition is objectively ascertainable.*

"In addition to the requirements set out by Rule 23, there is an implied requirement that the proposed class be ascertainable." Rhodes v. E.I. du Pont de Nemours & Co., 253 F.R.D. 365, 370 (S.D.W. Va. 2008) (citing Roman v. ESB, Inc., 550 F.2d 1343, 1348 (4th Cir. 1976)); cf. Coleman v. Union Carbide Corp., No. CIV.A. 2:11-0366, 2013 WL 5461855, at *21 (S.D.W. Va. Sept. 30, 2013) (noting that "the long-implicit concept of ascertainability" was incorporated into Rule 23 itself through the text of Rule 23(c)(1)(B), which provides that "[a]n order that certifies a class action must define the class . . . ."). A class must be ascertainable in order to ensure that compliance with an unfavorable judgment can be achieved with reasonable effort, without resorting to individualized fact-finding. See Romberio v. Unumprovident Corp., 385 F. App'x 423, 431 (6th Cir. 2009) (collecting authorities) (holding that the need for individualized fact-finding renders a class definition unsatisfactory); see also Walewski v. Zenimax Media, Inc., 502 F. App'x 857, 861 (11th Cir. 2012) (holding that the district court did

---

[6] Roberts has not filed any formal response to plaintiffs' motion to amend class definition.

not abuse its discretion by rejecting the proposed class as not adequately defined or clearly

ascertainable where there was no workable method for identifying the members of the proposed

class).

> Ascertainability serves several critical purposes including: 1) ensuring that class members can be identified in an administratively efficient manner compatible with the goals of class action treatment; 2) providing the "best notice practicable" to protect the interests of absent class members; and 3) allowing adequate opportunity for defendants to protect themselves by confirming that those bound by the class proceedings are easily identifiable. It is not necessary that every class member actually be identified prior to class certification, but the class plaintiff must clearly establish that there is a method by which class membership could be clearly ascertained.

Brooks v. GAF Materials Corp., No. 8:11-CV-00983-JMC, 2012 WL 5195982, at *3 (D.S.C.

Oct. 19, 2012) (internal citations omitted). The first and third purposes set forth in Brooks are at

issue here.[7] Rainey first argues that the amended proposed class definition fails because

"whether any particular person is presently a member of a same-sex 'couple' in Virginia is a

matter beyond any objective ascertainment." Id. at 2.

Contrary to this argument, if plaintiffs are successful here, defendants shall have no

difficulty identifying the members of the class. Two people – a couple – of the same sex will

apply for a marriage license. Or, two people of the same sex married in another jurisdiction will

seek recognition of their marriage. If plaintiffs prevail, defendants shall not be permitted to deny

such an application or such recognition solely on the basis that the couple is of the same sex.

Thus, determining to whom the judgment applies and how to implement such a judgment would

be simple. On the other hand, if defendants prevail, they have not articulated any realistic risk of

---

[7] Because this is a Rule 23(b)(2) class, concerns regarding notice do not apply. "Unlike Rule 23(b)(3), Rule 23(b)(2) neither requires that absent class members be given notice of class certification nor allows class members the opportunity to opt-out of the class action." Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 330 n.25 (4th Cir. 2006). Rule 23(b)(2) does not require notice because the rights of the absent class members are indirectly protected by the requirement that the relief being sought be predominantly injunctive or declaratory. Id.

future suits advancing identical claims against them, whether those suits would be barred by res judicata or the precedential effects of their favorable judgment. The court does not have concerns about fashioning a judgment that complies with Rule 23(c)(3)(A), which requires that, whether or not favorable to the class, the final judgment "include and describe those whom the court finds to be class members." Fed. R. Civ. P. 23(c)(3)(A). As such, the amended proposed class definition meets the requirement that the class members be identifiable in an administratively efficient manner and affords adequate opportunity for defendants to protect themselves by confirming that those bound by the class proceedings are easily identifiable.

This case is thus distinguishable from those cited by Rainey, where defendants would have been unable to reasonably determine the appropriate relief to bestow upon successful plaintiffs. In Rahman v. Chertoff, 530 F.3d 622 (7th Cir. 2008), the Seventh Circuit rejected a class for a litany of reasons, but noted in particular that if the plaintiffs prevailed, "framing relief [was] apt to require person-specific decisions." Id. at 626. Additionally, such relief would have required an inquiry into state secrets to which the court would not have access. Id. at 625. No such problems are present here. Moreover, the Rahman court expressly distinguished its disapproval of the proposed class before it from the class contemplated by the Advisory Committee Notes to Rule 23(b)(2). The Rahman court observed that "[a] class of 'all current and future employees of Corporation D' (which is said to discriminate on account of race) – the sort of class to which the Committee Note refers – is more concrete than the [disproved class at issue]. Its members could be enumerated eventually." Id. at 626. The members of the putative class here could be enumerated in the simple manner described above – those same-sex couples who apply for a marriage license or seek recognition of an out-of-state marriage.

Similarly, in <u>Jamie S. v. Milwaukee Public Schools</u>, 668 F.3d 481, 496 (7th Cir. 2012), the court declined to certify a class of children with learning disabilities that had not been identified for evaluation for special education. In doing so, the court noted that "identifying disabled students who might be eligible for special-education services is a complex, highly individualized task, and cannot be reduced to the application of a set of simple, objective criteria . . . . a class of unidentified but potentially [special education]-eligible disabled students is inherently too indefinite to be certified." <u>Id.</u> at 496. No such highly individualized task would be required for the class proposed here.

Furthermore, Rainey's assertion that the class is defective because "[w]hether or not any two people of the same sex in Virginia are a 'couple' depends entirely upon a subjective standard, <u>i.e.</u>, each individual's state of mind regarding another person's relational status," Resp. in Opp'n re Mot. to Amend Class Definition, Dkt. No. 83, at 2, is not apt. Here, observable and objective actions determine whether couples fall within the class definition by virtue of their application for a marriage license or request for recognition of an out-of-state marriage. In this context, the definition of couple is sufficiently clear and ascertainable.

In sum, the amended proposed class definition will not require any individualized fact-finding, nor is it based on unknowable or unascertainable information. As such, it meets the requirement of ascertainability.

B. *The amended proposed class definition is cohesive.*

Rainey also argues that the Proposed Amended Class is not cohesive as there is no evidence that all, or even most, same-sex couples in Virginia want to marry. Rainey argues that the 2010 census data cited by plaintiffs in establishing numerosity is flawed and further that the Pew Research Center survey cited by plaintiffs "cannot purport to reflect the percentage of same-sex couples in Virginia that are married under the laws of another jurisdiction or desire to marry each

18

other in Virginia." Resp. in Opp'n re Mot. to Amend Class Definition, Dkt. No. 79, at 6.

Because, Rainey asserts, plaintiffs have failed "to provide a non-speculative basis for concluding

that even the majority of 'same-sex couples in Virginia' share a common legal interest in this

litigation," the amended proposed class is "fundamentally non-cohesive." Id. This argument

misapprehends the requirements for class cohesiveness.

All members of a class "need not be aggrieved by or desire to challenge [the]

defendant[s'] conduct in order for some of them to seek relief under Rule 23(b)(2)." Wright &

Miller § 1775. As such, "the plaintiffs do not need to establish that [the] defendants' conduct is

damaging or offensive to every member of the proposed class." Kernan v. Holiday Universal,

Inc., No. JH90-971, 1990 WL 289505, at *5 (D. Md. Aug. 14, 1990) (citing Hess v. Hughes, 500

F. Supp. 1054, 1061-62 (D. Md. 1980)). Rainey's argument that the plaintiffs have not shown

that all or most same-sex couples in Virginia wish to marry is therefore beside the point. Such a

showing is nowhere required in Rule 23, or in the applicable case law.

There is no issue as to class cohesiveness. The Fourth Circuit has expressly stated that

"Rule 23(b)(2)'s categorical exclusion of class actions seeking primarily monetary relief . . .

*ensures that the class is sufficiently cohesive* [such] that the class-action device is properly

employed." Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 330 (4th Cir. 2006) (emphasis

added). There is no potential here for confronting individualized injuries resulting in divergent

interests among class members, the hallmark of a non-cohesive class. The alleged injury

suffered by the putative class members here is identical. As the Fourth Circuit has explained,

when determining the remedy in a Rule 23(b)(2) class action, the focus is not on the harm

suffered by the individual plaintiffs, but on "the *defendant's actions* affecting the class as a

whole." Id. (emphasis original). Here, defendants' enforcement of the challenged laws impacts

the amended proposed class as a whole. As such, it cannot be maintained that class cohesion is lacking.

None of the authorities cited by Rainey indicate otherwise. It is true that courts have observed that the certification requirements under Rule 23(b)(2) are particularly stringent as to cohesiveness. See, e.g., Gates v. Rohm & Haas Co., 655 F.3d 255, 264 n.12 (3d Cir. 2011). However, in conformity with the Fourth Circuit's view, the emphasis of the inquiry is on the nature of the relief sought. "The key to the [Rule23](b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" Id. at 264 (quoting Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2557 (2011)); see also Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso, 543 F.3d 597, 604 (10th Cir. 2008) ("The latter half of Rule 23(b)(2) requires that final injunctive relief be appropriate for *the class as a whole* .... and we have interpreted the rule to require that a class must be 'amenable to uniform group remedies.'" (emphasis original)). There can be no dispute that the injunctive relief sought by the plaintiffs here would either apply to the amended proposed class (or subclass) as a whole or not at all – the nature of the relief sought is indivisible among the putative class members. Put simply, the entire class wins or the entire class loses. This is the very definition of a cohesive class.[8]

---

[8] In contrast stand proposed class action suits seeking medical monitoring following exposure to environmental toxins. Issues with class cohesion in Rule 23(b)(2) cases frequently arise in that context, where the injunctive remedy sought must often be individualized based on the exposure level and medical history of the class members. See generally Rhodes v. E.I. du Pont de Nemours & Co., 253 F.R.D. 365, 371-72 (S.D.W. Va. 2008) (discussing the cohesiveness requirement of Rule 23(b)(2) and the issues medical monitoring classes face in meeting this requirement); see also Coleman v. Union Carbide Corp., No. CIV.A. 2:11-0366, 2013 WL 5461855, at *19-21 (S.D.W. Va. Sept. 30, 2013) (discussing Rhodes on this issue). No such individualized issues apply here.

C. *The amended proposed class will be further amended to exclude the Bostic Plaintiffs.*

Pursuant to the Notice of Request filed by the <u>Bostic</u> Plaintiffs asking to be excluded from the certified class, to which plaintiffs do not object, and to resolve the potential for conflict in litigation strategy between the two cases, the amended proposed class will be further modified by adding the following provision:

> No person who is a plaintiff in <u>Bostic v. McDonnell</u>, 2:13cv00395 (E.D. Va. filed Sept. 18, 2013), currently pending before the United States District Court for the Eastern District of Virginia, is included in the class, or either subclass.

**IV.  Conclusion.**

In sum, the amended proposed class, as further modified by the exclusion of the <u>Bostic</u> Plaintiffs, meets the requirements of numerosity, commonality, typicality, and adequacy of representation as set forth in Rule 23(a).  Furthermore, the amended proposed class seeks injunctive relief that, if granted, would be appropriate respecting the class (or subclass) as a whole.  As such, the requirements of Rule 23(b)(2) are also met.  Permitting the plaintiffs to amend their original proposed class definition would therefore not be futile.  Accordingly, the court will enter an appropriate order this day granting plaintiffs' motions and certifying the class.

The clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

Entered:  January 31, 2014

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge